S98A0379. JOHNSON v. THE STATE.
S98A0381. MORMAN v. THE STATE.
(501 SE2d 815)

HUNSTEIN, Justice.

Jennifer Johnson and Christopher Morman were convicted of felony murder and cruelty to children in the death of Jennifer's five-month-old son, Joshua. Morman was convicted of two additional counts of cruelty to children related to other instances of physical abuse to Joshua. The trial court merged one count of cruelty to children into the felony murder and sentenced appellants to life imprisonment. Morman received two consecutive 20-year sentences on the remaining counts of cruelty to children. They appeal and we affirm in

---

[29] McCormick on Evidence § 214.

this consolidated opinion.[1]

In the sole enumeration of error asserted by both appellants, they contend the evidence was insufficient to support the jury's verdict finding them guilty of the offenses for which they were charged. The jury was authorized to find that on the evening of Joshua's death, the apartment was occupied by the three adults: Jennifer Johnson, her nineteen-year-old brother, Michael Johnson,[2] and Jennifer's boyfriend, Christopher Morman. In response to a 911 call placed by Michael at approximately 6:00 the following morning, an emergency medical technician arrived at the apartment to find Joshua dead, his body lying on a chair. In a videotaped police interview Jennifer related that Joshua had been crying incessantly the day before his death and that when she fed Joshua at midnight he was healthy except for experiencing a cold and some constipation. She alleged that Joshua was not breathing when she made a routine check of the infant at approximately 5:00 the following morning. During her interview Jennifer related previous instances when Morman had abused Joshua. These instances were corroborated by neighbors who testified to one instance where both Michael and Jennifer stood by and watched Morman throw Joshua in the air with such force that the baby vomited and place Joshua between his legs to shake him and another instance where Morman swung the baby in the air by his wrists until the infant vomited. Morman denied any knowledge of the cause of Joshua's death and also denied other abuse of the infant. In his videotaped interview, Michael stated that his sister and Morman went to bed together at 3:30 a.m., but that he remained awake until 4:00-4:30 a.m. until he eventually fell asleep watching TV. He did not awake until he heard his sister cry out at 5:00 or 5:15 a.m.

These statements, however, conflicted with testimony by witness Snell, who lived in an adjacent apartment. Snell testified that she heard a baby cry about 3:00 a.m. and that the crying ceased after she heard a thump on the common wall between the two apartments. At about 3:30 a.m. she heard footsteps running down the apartment stairs and at 4:00 a.m. she saw Michael walking on the porch outside the apartment and heard him claiming that "he did not do it." Other

---

[1] The murder occurred between December 28-29, 1996 and appellants were indicted in Decatur County on May 7, 1997. On August 19, 1997, following a jury trial, appellants were found guilty of felony murder and cruelty to children. Morman was found guilty of two additional counts of cruelty to children for acts which occurred in September and October 1996. Appellants were sentenced on August 19, 1997. Jennifer Johnson's notice of appeal was filed on August 19, 1997; Morman's notice of appeal was filed on August 26, 1997; both appeals were docketed in this Court on November 26, 1997 and submitted for decision without oral argument.

[2] Michael Johnson was also convicted in the same trial of felony murder and cruelty to children. His notice of appeal was filed on January 6, 1998 and the appeal was docketed in this Court as Case No. S98A0652 on January 15, 1998.

witnesses who observed appellants the morning of Joshua's death testified that Morman showed no emotion about the incident. Police investigators testified that after they became aware that Joshua's death was not accidental, they went to Jennifer's apartment to secure physical evidence but could not find Joshua's crib. Jennifer informed the officers that the crib had been destroyed and thrown into a dumpster; it could not be located even following an extensive search of dumpsters in the area.

A forensic pathologist testified that Joshua was well nourished and suffered from no other disease, except a cold. The external trauma injuries were described as a pattern of bruising at the lower chest and upper abdomen resulting from a combination of knuckle hits, blows to the abdomen and vigorous gripping. Joshua's internal injuries consisted of a "pulpified" liver, a severe laceration to the inferior vena cava vein from the liver to the heart, two fractured ribs and excessive internal bleeding.[3] Joshua's internal organs also showed evidence of scarring as a result of previous trauma. The pathologist concluded that Joshua's injuries were inflicted, not accidental.

A participant to a crime may be convicted for the crime although he or she is not the person who directly commits the crime. OCGA §§ 16-2-20, 16-2-21. A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Id. at (b) (3) and (4). Mere presence at the scene is not sufficient to sustain a conviction of one being a party to a crime, but criminal intent may be inferred from conduct before, during, and after the commission of the crime. *Sands v. State*, 262 Ga. 367 (2) (418 SE2d 55) (1992). Whether Jennifer Johnson or Christopher Morman were parties to a crime and aided and abetted in the crimes charged or intentionally advised, encouraged, or counseled the other to commit the crime was a question for the jury. See *Harper v. State*, 155 Ga. App. 764 (1) (272 SE2d 736) (1980).

> This court does not weigh the evidence on appeal or resolve conflicts in trial testimony. Rather it is the function of this court to examine the evidence in the light most favorable to the verdict and to determine whether any rational trier of fact could have found the appellant[s] guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC

---

[3] Joshua's pulpified liver was defined by the pathologist as "basically mush." In order to put the injuries in context for the jury, the pathologist testified that the injuries sustained by Joshua, if suffered by an adult, would be tantamount to injuries sustained in a 50 mph or greater car accident.

2781, 61 LE2d 560) (1979).

*Booker v. State*, 257 Ga. 37, 38 (1) (354 SE2d 425) (1987). Considering the evidence as a whole, especially the videotaped testimony, we conclude that the evidence adduced at trial was sufficient to enable a rational trier of fact to find appellants guilty beyond a reasonable doubt as either perpetrators of or parties to the crime of cruelty to children and felony murder. We further conclude that the evidence against Morman was sufficient to sustain his additional convictions of cruelty to children. OCGA § 16-5-70; *Jackson v. Virginia*, supra; *Richardson v. State*, 177 Ga. App. 48 (1) (338 SE2d 506) (1985).

    *Judgments affirmed. All the Justices concur.*

DECIDED JULY 6, 1998 —
RECONSIDERATION DENIED JULY 30, 1998.

*Billy M. Grantham,* for appellant (case no. S98A0379).
*Ernie M. Sheffield,* for appellant (case no. S98A0381).
    *J. Brown Moseley, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth L. Jaeger, Assistant Attorney General,* for appellee.