## S98A0652. JOHNSON v. THE STATE.
### (506 SE2d 374)

SEARS, Justice.

Michael Johnson appeals from his felony murder conviction and resulting life sentence concerning the death of his sister's five-month-old son.[1] Following a joint trial, Johnson, his sister, and her boyfriend

---

[1] The murder occurred on the night of December 28-29, 1996, and Johnson was indicted (along with his sister and her boyfriend) by the Decatur County grand jury on May 7, 1997. Following a jury trial, Johnson was found guilty on August 19, 1997 of felony murder, with cruelty to children being the underlying felony, and was sentenced to life imprisonment. Johnson's new trial motion was filed on September 17, 1997, and denied on December 16, 1997. The court reporter certified the record as complete on January 13, 1998. Johnson's notice of appeal was filed on January 6, 1998, the appeal was docketed on January 15, 1998, and was submitted for decision without oral argument on March 9, 1998.

were convicted in connection with the infant's death. Because we conclude that the evidence presented against Johnson was insufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that he was guilty of felony murder, we reverse.

The evidence of record, when viewed in a light most favorable to the guilty verdict, was sufficient to enable rational jurors to make the following factual findings: On the night of December 28, 1996, Jennifer Johnson's apartment was occupied by three adults — appellant Johnson, his sister Jennifer, and her boyfriend Christopher Morman.[2] Johnson was downstairs in the apartment, either on the sofa or on a mattress placed on the floor, and Jennifer and Morman were upstairs with the baby. At approximately 6:00 the following morning, Johnson placed a call to 911 emergency services. Johnson told the 911 operator that the baby was not breathing. When emergency technicians arrived at the apartment, the baby was dead. It was later determined that the infant had been bludgeoned to death.

Ms. Snell, who lived in the adjoining apartment, testified that at approximately 3:00 a.m., she had heard the baby crying through the upstairs common wall between the apartments, and that she then heard a loud thump. After that, she did not hear the baby cry again. Thirty minutes later, she heard footsteps on the neighboring apartment's stairwell. At approximately 4:00 a.m., she heard Johnson on the porch outside the apartment saying "I didn't do it. I didn't do it." The next day, another neighbor saw Johnson outside the apartment crying and saying, "They just aggravate, just aggravate, just aggravate." Still another neighbor heard Johnson on the telephone, saying that he "did not do it." When investigators went to the apartment to photograph the baby's crib, they were told by Jennifer Johnson that the crib had been destroyed and placed in a dumpster. A search of dumpsters in the apartment complex proved fruitless; the crib was not recovered. When questioned by police about the baby's death, Johnson denied any knowledge of it.

Thus, the State presented evidence that (1) on the night of the murder, Johnson was downstairs in the apartment; (2) on the night of the murder, two other adults — the baby's mother and her boyfriend — were upstairs in the apartment, with the baby; (3) Johnson called 911 to report that the baby was not breathing; (4) neighbors heard Johnson say he "did not do it," and observed him acting upset; (5) Johnson denied knowledge about the murder, and offered no help to investigators; and (6) someone, acting alone or in concert with someone else, removed the crib from the apartment. There also was

---

[2] Jennifer Johnson's and Christopher Morman's convictions have already been affirmed by this Court. *Johnson v. State*, 269 Ga. 632 (501 SE2d 815) (1998).

some evidence to suggest that, on one previous occasion, Johnson and others had observed Morman toss the infant in the air, causing the baby to vomit.

In considering whether the evidence presented at trial is sufficient to support a criminal conviction, this Court views the evidence submitted in a light most favorable to the prosecution,[3] and defers to the jury's assessments of the weight of the evidence and the credibility of witnesses.[4] Even with the benefit of these favorable inferences, however, the State did not present evidence upon which a reasonable jury could have concluded that Johnson committed felony murder in connection with the infant's death. Under OCGA § 16-5-1 (c), a person commits felony murder when, in the commission of an underlying felony, he causes the death of another, irrespective of malice. A person commits the offense of cruelty to children, the underlying felony in this matter, when he maliciously causes a child under the age of 18 cruel or excessive physical pain.[5]

The State is, of course, required to prove every element of a crime charged beyond a reasonable doubt.[6] In this case, the State failed to meet that burden. Certainly, no direct evidence was introduced at trial to establish that Johnson acted with malicious intent toward the baby, or caused the baby to suffer physical pain. Nor was there any circumstantial evidence from which the jury could infer that Johnson mistreated the baby. It was shown only that Johnson was present in the apartment on the night of the murder, denied having committed the murder, called 911, and failed to assist in the police investigation. Since Johnson was heard saying "I didn't do it" roughly two hours before the 911 emergency call was made, it might be inferred that he failed to call 911 immediately after learning that the baby had been harmed. While it also might be inferred that he withheld relevant information from investigators, such conduct, while culpable, provides no basis for reasonable persons to conclude beyond a reasonable doubt that Johnson was guilty of bludgeoning the baby, causing its death. As made clear by the recitation of facts above, the State's evidence did not establish, or even infer, the existence of any of the essential elements of cruelty to children or felony murder.

Furthermore, the State's case against Johnson was based entirely upon circumstantial evidence, and the law is clear that unless the State's evidence excludes every reasonable hypothesis except that of Johnson's guilt, it has failed to carry its burden to

---

[3] *Rozier v. State*, 259 Ga. 399 (383 SE2d 113) (1989).
[4] *Roker v. State*, 262 Ga. 220 (416 SE2d 281) (1992).
[5] OCGA § 16-5-70 (b).
[6] OCGA § 16-1-5.

establish guilt beyond a reasonable doubt.[7] From the evidence, it is reasonable to hypothesize that on the night of the murder, Johnson was downstairs in the apartment while the baby was upstairs with Morman and Jennifer Johnson. That arrangement would be consistent with the usual sleeping arrangement in the apartment. It also would be consistent with the testimony of the neighbor, Snell, who was upstairs in her adjoining apartment, that she could hear the baby's cries through the upstairs wall. Because Snell also heard the sound made when the baby was bludgeoned, and the silence that followed, it is reasonable to conclude that the fatal blow or blows also were delivered upstairs. No evidence exists, however, to dispel the reasonable possibility that during this time, Johnson was downstairs in the apartment — which is where he usually slept — and had no knowledge of the attack on the baby until after it was over. Nor is there any evidence to suggest that Johnson had previously inflicted harm upon the baby, or had been a party to such abuse. The State offered nothing to discount the reasonable possibility that Johnson did not contribute to the baby's death, other than his presence in the apartment that night. Johnson's mere presence at the scene of the murder, without anything more, is not an adequate basis to support his conviction for that crime.[8]

Accordingly, we must conclude that the evidence presented at trial was insufficient to support Michael Johnson's conviction for felony murder, with cruelty to children being the underlying felony, in connection with the death of his infant nephew.

*Judgment reversed. All the Justices concur, except Hunstein, Thompson and Hines, JJ., who dissent.*

HUNSTEIN, Justice, dissenting.

For the reasons set forth in my majority opinions in *Johnson v. State*, 269 Ga. 632 (501 SE2d 815) (1998) and *Morman v. State*, 269 Ga. 632 (501 SE2d 815) (1998), I am committed to the view that the evidence presented in this case was sufficient to support the jury's verdict finding Michael Johnson and his co-defendants guilty of felony murder based on the underlying felony of cruelty to children. Therefore, I respectfully dissent to the reversal of his conviction.

There is evidence in the record that Michael Johnson had been a party to or complied with the prior abuse of the baby. One neighbor specifically testified that she observed Chris Morman grab the three-four-month-old baby by the wrist and swing him above his head until the baby threw up. This same witness testified that Michael Johnson

---

[7] *Mims v. State*, 264 Ga. 271, 273-274 (443 SE2d 845) (1994) (Hunt, C. J., concurring).
[8] See *Williams v. State*, 256 Ga. 460, 461 (349 SE2d 695) (1986); *Tanner v. State*, 161 Ga. 193, 199 (130 SE 64) (1925).

was present when this abuse occurred. In addition there was evidence that Michael Johnson lived in the home with Jennifer Johnson and apparently spent much of his time there as he was unemployed. Under such circumstances his knowledge of prior abuse would have been the same as Jennifer's knowledge. Michael Johnson's own testimony shows that he was aware of past physical abuse of the infant by Christopher Morman and after the infant died lied to the police by denying any past abuse of the baby and depicting Christopher Morman as a caring adult. This evidence that Michael Johnson knew of the past abuse and participated in the cover-up was sufficient to convict him of the crime of cruelty to children as a party to the crime.

I am likewise committed to the conclusion that Michael Johnson, a member of the household, knew as well as any of the co-defendants how Chris Morman treated the baby, and was lying about it when he talked to investigators. "A participant to a crime may be convicted for the crime although he . . . is not the person who directly commits the crime. OCGA §§ 16-2-20, 16-2-21." Id. Because the law provides that criminal intent may be inferred from conduct before, during, and after the commission of a crime, I would affirm Michael Johnson's conviction.

I am authorized to state that Justice Thompson and Justice Hines join in this dissent.

DECIDED SEPTEMBER 28, 1998.

*Robert M. Thomas,* for appellant.

*J. Brown Moseley, District Attorney, Robert R. Auman, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth L. Jaeger, Assistant Attorney General,* for appellee.