S00A0985. SHARPE v. THE STATE.
S00A0986. WIGGINS v. THE STATE.
S00A0987. SHIPMAN v. THE STATE.
S00A0988. MOBLEY v. THE STATE.
(531 SE2d 84)

CARLEY, Justice.

Dennis Lee Sharpe, Rusty Wiggins, Richard Shipman, and Steve Morrell Mobley (Appellants) were tried jointly for the malice murder of Keibu Scott. The jury found all of the Appellants guilty, and the trial court sentenced each to life imprisonment. Appellants filed separate motions for new trial, which the trial court denied in an extensive order. They also filed separate notices of appeal, and the cases have been consolidated for purposes of appellate review.[1]

1. Construed most favorably in support of the verdicts, the evi-

---

[1] The murder occurred on October 29, 1997. The grand jury returned its indictments on March 10, 1998. The jury found Appellants guilty on May 20, 1999 and, on the same day, the trial court entered the judgments of conviction and sentences. Shipman, Mobley, and Wiggins filed their motions for new trial on June 11, 17, and 19, 1999, respectively. Sharpe initially filed a notice of appeal on June 17, 1999, but then filed an out-of-time motion for new trial on October 1, 1999 with the trial court's permission. Sharpe amended his motion for new trial on December 1, 1999, and Mobley and Shipman amended their motions for new trial on December 2, 1999. The trial court denied all motions for new trial on December 29, 1999. Sharpe, Wiggins, Shipman, and Mobley filed their notices of appeal on January 14, 18, 24, and 27, 2000, respectively. The case was docketed in this Court on March 2, 2000 and orally argued on May 15, 2000.

·dence shows that Shipman was storing some drugs in a friend's apartment in Lyons. Scott, the murder victim, and another man broke into the apartment, pointed guns at the occupants, and stole the drugs. Shipman learned about the robbery and, a few days later, he and the three other Appellants took a taxi to Vidalia. There, Wiggins, Mobley, and Sharpe visited LaWanda Roundtree at her apartment, and later Wiggins returned to that apartment alone. Shortly thereafter, the Appellants, one of whom had a handgun with a red laser sight, entered the apartment of Scott's girlfriend and her sister, Tiffany Dixon, which was two doors down from Ms. Roundtree's residence. Three of the Appellants took Scott out of the apartment into the woods, while a fourth stayed with Ms. Dixon for a short time. Subsequently, Scott was struck in the face and was shot twice with two different weapons. These injuries resulted in Scott's death. Ms. Roundtree heard the gunshots soon after Wiggins' second visit. Wiggins, Mobley, and Sharpe took a taxi back to Lyons, but Shipman called his girlfriend, Debra Toby, who drove him back home. During a police interview, Shipman acknowledged ownership of a handgun with a red laser sight and turned it over. Ms. Toby subsequently told police that Shipman admitted to her that Appellants had killed Scott. At trial, however, she recanted this statement and denied that Shipman made the admission. In discussions with the police, Sharpe admitted his presence at the scene, but stated that he ran away before the shooting.

Appellants contend that the evidence showed no more than the presence of each of them at the scene of the crime, and was not sufficient for a jury to find them guilty as parties to the crime of malice murder. However, the jury could infer from the conduct of Appellants throughout the day of the shooting that each of them aided and abetted in the murder or intentionally advised, encouraged, or counseled the others to commit that crime. See *Johnson v. State*, 269 Ga. 632, 634 (501 SE2d 815) (1998); *Simpson v. State*, 265 Ga. 665-666 (461 SE2d 210) (1995); *Satterfield v. State*, 256 Ga. 593, 594 (1) (351 SE2d 625) (1987). Appellants particularly attack the credibility of Ms. Toby's statements to the police, in light of her recantation at trial. In discharging its duty to evaluate the credibility of witnesses, however, the jury was authorized to believe Ms. Toby's inculpatory pre-trial statements and to reject her exculpatory testimony at trial. *Berry v. State*, 268 Ga. 437, 438 (1) (490 SE2d 389) (1997). Ms. Dixon's testimony and Shipman's statements to Ms. Toby, along with considerable corroborating evidence, proved that all of the Appellants participated in the murder pursuant to a plan to retrieve the stolen drugs and to kill Scott. In fact, they were dressed in dark clothing, and at least three carried guns. One went to the back door, apparently to prevent Scott's escape. After taking Scott outside, they left a guard

with Ms. Dixon, said something like "we got what we want," and threatened to kill her also. The evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that each of the Appellants was a party to the crime of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *McKenzie v. State*, 271 Ga. 47 (1) (518 SE2d 404) (1999); *Crumbley v. State*, 264 Ga. 829, 830 (1) (452 SE2d 106) (1995); *Chapman v. State*, 263 Ga. 393 (435 SE2d 202) (1993). Accordingly, the trial court correctly denied their motions for directed verdict.

2. Appellants urge that the trial court erred in denying their motions for severance of the trials.

In a non-death penalty case, " '(t)he defendant requesting a severance has the burden of making a clear showing of prejudice and a denial of due process in the absence of severance.' " *Butler v. State*, 270 Ga. 441, 446 (4) (511 SE2d 180) (1999). According to Appellants, the number of defendants created confusion, and they point to the fact that one juror asked the trial court to place nameplates in front of them. However, the record does not indicate anything more than this one, slight instance of confusion early in the trial, which the trial court handled without objection by having the defense attorneys introduce their clients.

There was no danger of prejudicial evidentiary overlap, as Sharpe's statements were the only evidence which was not admissible against all Appellants equally. The trial court protected the co-defendants by redacting Sharpe's statements and informing the jury that the statements were admissible only against him. *Butler v. State*, supra at 447 (4); *Bryant v. State*, 270 Ga. 266, 269 (2) (507 SE2d 451) (1998). Furthermore, there was no showing that, if they had been tried separately, any of the Appellants would have been more likely to testify. *Felder v. State*, 270 Ga. 641, 644 (5) (514 SE2d 416) (1999); *Owen v. State*, 266 Ga. 312, 314 (2) (467 SE2d 325) (1996). While Appellants' defenses were not identical, neither were they antagonistic. Indeed, none of them presented any evidence at trial. *Bryant v. State*, supra at 270 (2). The trial court did not abuse its discretion in denying Appellants' motions for severance.

3. Relying upon *Johnson v. State*, 260 Ga. 17, 19 (4) (389 SE2d 238) (1990), Appellants contend that the trial court erred in admitting the pre-trial statements of Ms. Toby as prior inconsistent statements and as substantive evidence. Under *Johnson*, a prior inconsistent statement is inadmissible in the absence of some showing that the witness who testified inconsistently at trial either had personal knowledge or had received information directly from one of the defendants themselves. In her previous statements to the police, Ms. Toby clearly identified Shipman as the source of her information. Thus, the State satisfied the requirement of *Johnson*, and the trial

court correctly admitted Ms. Toby's prior inconsistent statements as both impeaching and substantive evidence. See *Campbell v. State,* 263 Ga. 824, 826 (4) (440 SE2d 5) (1994).

4. Appellants also contend that the trial court erred in admitting, under the co-conspirator exception to the hearsay rule, the statements attributed to Shipman by Ms. Toby. The specific objection is that there were not sufficient indicia of reliability to ensure that their Sixth Amendment rights were not violated.

Appellants do not contend that the State failed to make a satisfactory prima facie showing of conspiracy. Instead, they focus on the credibility of Ms. Toby in light of her recantation. The appropriate inquiry, however, is the reliability of the statement of the co-conspirator declarant, rather than that of the testifying witness who was subject to cross-examination. *Copeland v. State,* 266 Ga. 664, 666 (2) (b) (469 SE2d 672) (1996). When Shipman's statements are properly analyzed, the relevant factors weigh heavily in favor of this reliability. *Ottis v. State,* 269 Ga. 151, 155-156 (3) (496 SE2d 264) (1998); *Fetty v. State,* 268 Ga. 365, 371-372 (7) (489 SE2d 813) (1997); *Copeland v. State,* supra at 665-666 (2) (b). Therefore, Shipman's statements were admissible under the co-conspirator exception to the hearsay rule.

5. Mobley, Sharpe, and Shipman enumerate as error the trial court's denial of their motions for mistrial, on the ground that comments by Juror Curry during voir dire tainted the entire jury panel and prevented a fair trial. Curry stated that, before he retired from his employment with the county, he may have used "these boys" for work at the jail. Mobley, Sharpe, and Shipman complain that this remark constituted both an indication of incarceration and a racial epithet. See *Kornegay v. State,* 174 Ga. App. 279 (329 SE2d 601) (1985).

"The time for making a motion for mistrial is not ripe until the case has begun, and the trial does not begin until the jury has been impaneled and sworn." *Ferguson v. State,* 219 Ga. 33, 35 (3) (131 SE2d 538) (1963). Therefore, the trial court correctly refused to declare a mistrial. *Ferguson v. State,* supra at 35 (3); *Loaiza v. State,* 186 Ga. App. 72, 73 (2) (366 SE2d 404) (1988). Appellants did not utilize the proper procedural tool, which " 'was either a "challenge to the poll" (cits.) or a motion for a postponement to impanel other jurors who had not heard the remark.' [Cit.]" *Callaway v. State,* 208 Ga. App. 508, 511 (2) (431 SE2d 143) (1993). However, there is authority for disregarding the nomenclature of a defendant's premature motion for mistrial when the clear import of the motion is that the jury panel be excused and another panel be made available. *Callaway v. State,* supra at 511 (2); *Swint v. State,* 199 Ga. App. 515, 516 (1) (405 SE2d 333) (1991). In any event, such a remedy was not

required here. "The inquiry is whether the remarks were *'inherently* prejudicial and deprived [Appellants] of [their] right to begin [their] trial with a jury "free from even a suspicion of prejudgment or fixed opinion. . . ." (Cit.)' [Cit.]" (Emphasis in original.) *Callaway v. State*, supra at 511 (2). "Of course, where the facts establish only 'gossamer possibilities of prejudice,' *Snyder v. Mass.*, 291 U. S. 97, 122 (54 SC 330, 78 LE2d 674) (1934), prejudice is not inherent." *Callaway v. State*, supra at 512 (2). In this case, Juror Curry expressed uncertainty, stating that he used different individuals in his work for the county and that they "might not have been these." Thus, "[t]he trial court did not abuse its discretion in refusing to strike the panel, as this potentially disparaging remark was not 'so inherently prejudicial as to deny [Appellants] a fair trial.' [Cit.]" *Nelson v. State*, 222 Ga. App. 443, 444 (2) (474 SE2d 304) (1996). See also *Sims v. State*, 226 Ga. App. 116, 117 (2) (486 SE2d 365) (1997); *Pruitt v. State*, 176 Ga. App. 317 (1) (335 SE2d 724) (1985). Curry's comments neither necessarily implied Appellants' guilt of the offense under consideration, nor linked them to other criminal violations. *Callaway v. State*, supra at 512 (2). Furthermore, the term "boys" "is not by itself a vulgar or odious word, as was the word used in *Kornegay*." *Stephens v. State*, 208 Ga. App. 620, 622 (2) (e) (431 SE2d 422) (1993). Moreover, the transcript shows, at most, that Curry was the only prospective juror who might harbor racial prejudice, and he was excused properly for cause. See *Spencer v. State*, 260 Ga. 640, 644 (3) (398 SE2d 179) (1990). Indeed, the trial court took the additional corrective action of inquiring whether anything said during voir dire would prevent the jurors from being fair and impartial, and no prospective juror gave any affirmative response. *Sims v. State*, supra at 117-118 (2); *Pruitt v. State*, supra at 318 (1).

6. Sharpe and Shipman contend that the trial court improperly substituted "helps" for "aids or abets" in its charge on the principle of parties to a crime. OCGA § 16-2-20 (b) (3). In giving the contested charge, the trial court followed the specific language of the suggested pattern jury instruction. Strict adherence to the statutory language is not required, so long as the substance of the principle of law set forth is sufficiently imparted to the jury. *Daniels v. State*, 264 Ga. 259, 261 (2), fn. 4 (443 SE2d 622) (1994); *Johnston v. State*, 232 Ga. 268, 272 (5) (206 SE2d 468) (1974). Aiding and abetting encompasses the concept of helping in the commission of a crime. *Jones v. State*, 233 Ga. App. 291, 293 (2) (503 SE2d 902) (1998). See also *Upshaw v. State*, 221 Ga. App. 655, 656 (472 SE2d 484) (1996). In relevant part, the trial court charged that "[a] person is a party to a crime only if that person . . . [i]ntentionally helps in the commission of the crime. . . ." " '[T]he charge to the jury is to be taken as a whole and not out of context when making determinations as to the correctness

of same.' [Cit.]" *Leigh v. State*, 223 Ga. App. 726, 731 (3) (478 SE2d 905) (1996). Considered as a whole, the trial court's charge fully and adequately informed the jurors of the correct legal principles concerning parties to a crime. See *Daniels v. State*, supra at 261 (2).

7. Sharpe and Shipman urge this Court to hold that OCGA § 16-2-20, the parties-to-a-crime statute, is unconstitutional. However, they did not raise this issue until their motions for new trial, and the trial court expressly and correctly refused to rule on the merits of that untimely constitutional challenge. " 'A constitutional attack on a criminal statute of this state cannot be raised for the first time in a motion for new trial. [Cits.]' " *Shivers v. State*, 261 Ga. 736 (1) (b) (410 SE2d 122) (1991). See also *Kolokouris v. State*, 271 Ga. 597 (1) (523 SE2d 311) (1999). Nevertheless, Sharpe and Shipman request that this constitutional issue be addressed on appeal in the interest of judicial economy. *Campbell v. State*, 268 Ga. 44, 45 (2) (485 SE2d 185) (1997); *Barnes v. State*, 244 Ga. 302, 303 (1) (260 SE2d 40) (1979). We decline to apply that principle where, as here, the constitutionality of OCGA § 16-2-20 was raised in an untimely manner below and the trial court, as it was authorized to do, purposely refused to make a distinct ruling on the merits. See *Massey v. State*, 265 Ga. 632, 634 (2), fn. 2 (458 SE2d 818) (1995).

8. With regard to Shipman's *Batson* motion, the trial court ruled that he did not make a prima facie showing of racial discrimination. However, it nevertheless required the prosecutor to state the reasons for his three peremptory strikes of African-American jurors. Those reasons were that one juror knew several of the witnesses, another knew one of the Appellants, and the third juror or a member of her family had been represented by Mobley's public defender. Shipman opines that these reasons were "contrived," but does not explain why he so contends. The trial court determined that each of these reasons was racially neutral. Even assuming that Shipman established a prima facie case, the trial court was authorized to find that these reasons were neutral, non-racial, and, in the absence of any further showing by Shipman, fatal to his *Batson* claim. *Lyons v. State*, 271 Ga. 639, 641 (5) (522 SE2d 225) (1999); *Jenkins v. State*, 269 Ga. 282, 290 (11) (498 SE2d 502) (1998); *Hodnett v. State*, 269 Ga. 115, 116-117 (2) & fn. 2 (498 SE2d 737) (1998); *Berry v. State*, 267 Ga. 605, 609 (5) (481 SE2d 203) (1997).

9. Shipman further contends that the admission of Sharpe's redacted statements violated the holding in *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968) and its progeny. See *Hanifa v. State*, 269 Ga. 797, 800 (2) (505 SE2d 731) (1998). "Since there was no *Bruton* objection at trial, he is foreclosed from raising this claim on appeal. [Cit.]" *Haynes v. State*, 269 Ga. 181, 182 (2) (496 SE2d 721) (1998).

10. Shipman urges that the trial court erroneously interfered with the trial process by giving legal advice to Ms. Toby, by implying to her that a perjury charge might be brought against her, and by arranging for a lawyer to counsel with her. To the contrary, however, the trial court was obligated to warn Ms. Toby about the possibility of perjury charges, and it appropriately provided an attorney to advise her. *Hester v. State*, 219 Ga. App. 256, 257 (2) (465 SE2d 288) (1995). Moreover, the trial court's actions could not have harmed Shipman, because Ms. Toby's trial testimony was favorable to him, and the trial court made its remarks to her outside of the presence of the jury.

After Ms. Toby's testimony, the trial court instructed the jury that any portion of her testimony "that suggests a law violation that's not the subject of this prosecution shall not be considered . . . as incriminatory evidence against any defendant. . . ." Shipman urges that this instruction related to possible perjury by Ms. Toby and necessarily implied to the jury that her in-court testimony was unworthy of belief. In context, however, it is clear that the trial court was not commenting on Ms. Toby's credibility, but on her references to criminal acts other than those specifically at issue in the case on trial. *Chapman v. State*, 164 Ga. App. 662, 663 (2) (297 SE2d 322) (1982). See also *McNeese v. State*, 236 Ga. 26, 28 (1) (222 SE2d 318) (1976).

11. Shipman contends that the trial court erred in remanding all of the Appellants into custody in the later stages of trial, since the jury had observed them going freely to and from the courtroom during the first two days of trial. By failing to object to this change in custodial status at the time thereof, Shipman waived the right to assert any error on appeal. See *Wilkes v. State*, 221 Ga. App. 390, 393 (2) (471 SE2d 332) (1996); *Carter v. State*, 192 Ga. App. 726, 728 (5) (386 SE2d 389) (1989).

12. Shipman further asserts that the trial court erred in failing to instruct the jury as to the standard of proof for a conviction based on circumstantial evidence. OCGA § 24-4-6. It was not incumbent on the trial court to give such a charge, because Shipman did not make any request therefor and the State's case rested on both circumstantial and direct evidence. *Harris v. State*, 267 Ga. 435, 437 (2) (479 SE2d 717) (1997); *Thompson v. State*, 265 Ga. 677, 679 (4) (461 SE2d 528) (1995).

13. Shipman contends that the trial court erroneously charged on impeachment, since the State offered Ms. Toby's prior statements as substantive evidence. Because the prior statements were inconsistent with Ms. Toby's trial testimony, however, they were admissible as *both* impeaching and substantive evidence. *Berry v. State*, supra at 438 (1); *Render v. State*, 267 Ga. 848, 850 (3) (483 SE2d 570) (1997). Thus, the trial court was authorized to instruct the jury on impeachment.

14. Shipman also enumerates as error a comment made by the trial court during jury selection. However, he does not address this enumeration in his brief, entirely omitting both argument *and* any citation of authority in support thereof. Accordingly, we deem this enumeration of error as abandoned under Supreme Court Rule 22. *Felix v. State*, 271 Ga. 534, 539, fn. 6 (523 SE2d 1) (1999); *Hayes v. State*, 261 Ga. 439, 444 (6) (d) (405 SE2d 660) (1991).

*Judgments affirmed. All the Justices concur.*

DECIDED MAY 30, 2000 —
RECONSIDERATION DENIED JULY 28, 2000.

*Salter & Shook, Jason A. Craig*, for appellant (case no. S00A0985).

*Thomas J. O'Donnell, Jr.*, for appellant (case no. S00A0986).

*Stubbs & Associates, M. Francis Stubbs*, for appellant (case no. S00A0987).

*Kathy S. Palmer*, for appellant (case no. S00A0988).

*Richard A. Malone, District Attorney, Samuel H. Altman, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Wesley S. Wood, Assistant Attorney General*, for appellee.