S11A1012. SLAUGHTER v. THE STATE.
(716 SE2d 180)

HINES, Justice.

Deontarius Otis Slaughter appeals his convictions for felony murder while in the commission of aggravated assault and possession of a firearm during the commission of a felony in connection with the fatal shooting of Jarvis Beasley. Slaughter challenges the trial court's denial of his oral motion to dismiss a panel of the venire and the sufficiency of the evidence of his guilt. Finding the challenges to be without merit, we affirm.[1]

The evidence construed in favor of the verdicts showed the following. On March 2, 2009, Slaughter borrowed his girlfriend's burgundy Mitsubishi, which bore temporary license tags, and her cell phone. He returned the car around 2:30 p.m. or 3:00 p.m. that afternoon, and told his girlfriend to cancel her cell phone, saying that he lost it; she complied with the request. Jarvis Beasley was spending a lot of time at his uncle's apartment in DeKalb County, and he began selling the drug ecstacy. On March 2, 2009, Beasley's uncle returned home and witnessed Beasley on the telephone. Shortly

---

[1] The crimes occurred on March 2, 2009. On July 9, 2009, a DeKalb County grand jury returned an indictment against Slaughter for Count 1 – malice murder; Count 2 – felony murder while in the commission of the criminal attempt to commit armed robbery; Count 3 – attempt to commit armed robbery; Count 4 – felony murder while in the commission of aggravated assault; Count 5 – aggravated assault; Count 6 – possession of a firearm during the commission of the felony of felony murder as alleged in Count 2; Count 7 – possession of a firearm during the commission of the felony of felony murder as alleged in Count 4; and Count 8 – possession of a firearm by a convicted felon. He was tried before a jury December 7-16, 2009, and found guilty on Counts 4, 5, and 7. The jury found him not guilty on Count 1, and there were directed verdicts of acquittal on Counts 2, 3, and 6. An order of nolle prosequi was entered on Count 8. On December 16, 2009, Slaughter was sentenced to life in prison on Count 4, and a consecutive five years in prison on Count 7; Count 5 was found to be merged for the purpose of sentencing. A motion for new trial was filed on January 14, 2010, and an amended motion for new trial was filed on December 7, 2010. The motion for new trial, as amended, was denied on December 14, 2010, and a notice of appeal was timely filed on January 14, 2011, inasmuch as the office of the Clerk of the Superior Court of DeKalb County was closed on January 13, 2011, due to inclement weather. The case was docketed in the April 2011 term of this Court, and the appeal was submitted for decision on the briefs.

thereafter, there was a knock on the apartment door, Beasley peered through the peephole, and then exited the apartment joining an African-American man outside and locked the apartment door behind him, acting "as if he [knew] who it was." After about a minute, Beasley's uncle heard "some scuffle" and then two gunshots. The uncle opened the door and saw Beasley "slumped over on the steps"; blood was "pouring" out of Beasley and he was unresponsive. The police responded after a radio dispatch at approximately 2:24 p.m.

A few minutes before the shooting, three young African-American men were seen peering over a fence toward the apartment complex. Just after the gunfire, two of the men were seen running after and jumping into a burgundy Mitsubishi with temporary license tags. Also, about 14 minutes before the shooting was reported, there were three communications in rapid succession between Beasley's phone and the phone Slaughter had borrowed from his girlfriend. The first was a text to Beasley asking, "what's up on them ten packs?"; the "ten pack" was street parlance for a pack of ten ecstacy pills. Over the next few minutes, there was an incoming call to Beasley from the phone lent to Slaughter and then a call from Beasley to that same phone.

Following the shooting, Slaughter told individuals with whom he had close relationships that "he needed another pill connect" because his connection had been shot and that his connection was not "on his feet no more."

Beasley died from a single gunshot wound that entered the top of his head and traveled straight downward, passing through the center of his brain, the base of his skull, the soft part of his palate, the roof of his mouth and tongue, and then lodged in his neck and the front of his spine.

1. Slaughter contends that the trial court improperly denied his motion to strike a jury panel, in violation of the State and Federal Constitutions, and that the denial resulted in the guilty verdicts at trial. However, the contention is without merit.

During voir dire, a member of the venire reported to the trial court that as he was exiting a crowded elevator, he overheard another member of the venire, whom he believed was Juror No. 13, and whom he described by gender, race, appearance, and dress, remark to a fellow venireman, whose venire badge read Juror No. 14 or contained the numeral 4, and whom he also described by race and gender, that the defendant "needs to just admit that he is guilty so we can get out of here." The venireman to whom the comment was made allegedly responded, "Yeah, yeah, that's right, man, because I don't want to be down here either." Defense counsel requested that both veniremen, i.e., Juror Nos. 13 and 14, be removed for cause.

The trial court brought in Juror No. 14 for questioning, and that

individual acknowledged that he heard the statement but did not remember who said it; this man was excused for cause after stating that, based solely on the charges against Slaughter, he believed that Slaughter was guilty and doubted that he could be fair and impartial and render a verdict based upon the evidence presented. Upon being questioned by the trial court, Juror No. 13 denied making the statement, saying that he went off-site for lunch, purchased cigarettes, and returned. Juror No. 24, who also fit the description of the maker of the alleged statement, was also questioned by the trial court and denied making or overhearing the comment. There was no indication that any other member of the venire could possibly have been involved in the reported exhange. Defense counsel moved orally to dismiss the entire jury panel, and the motion was denied.

In assessing whether the trial court should have excused all members of the jury panel who might have been privy to any unauthorized comments or discussions, the appropriate inquiry is "whether the remarks were inherently prejudicial and deprived (appellant) of (his) right to begin (his) trial with a jury free from even a suspicion of prejudgment or fixed opinion." (Citations, punctuation and emphasis omitted.) *Kinder v. State*, 284 Ga. 148, 150 (2) (663 SE2d 711) (2008). Here, the trial court took appropriate corrective action by questioning individually all prospective jurors who fit the description of those involved in the alleged unauthorized comments to ascertain whether they had been prejudiced thereby, and there was no indication of any such prejudice. Furthermore, the seated jurors[2] were instructed not to discuss the case in any way, and they affirmed that they would honor their oaths and render fair and impartial verdicts based upon the evidence presented at trial. Even accepting as fact that the alleged exchange occurred, because of the corrective actions by the trial court and the responses of the veniremen at issue, there was no inherent prejudice to the array but, at most, only the "gossamer possibility of prejudice." Id.; *Sharpe v. State*, 272 Ga. 684, 688 (5) (531 SE2d 84) (2000). Slaughter was not denied a fair and impartial trial, and the trial court did not abuse its discretion in refusing to strike the entire panel. *Kinder*, supra at 150-151 (2).

2. There is likewise no merit to Slaughter's remaining contention that the trial court erred in not directing verdicts of acquittal as to all counts in the indictment which were submitted to the jury because the evidence was insufficient to find him guilty on those charges. The denial of a motion for a directed verdict of acquittal is

---

[2] Slaughter chose not to exercise a peremptory strike as to Juror No. 13, and he was seated on the jury.

reviewed under the "sufficiency of the evidence" test of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Hicks v. State*, 285 Ga. 386, 388 (2) (677 SE2d 111) (2009). The evidence, which included but was not limited to, the testimony of eyewitnesses, the apparent initial purpose of the meeting with the victim as a drug buy, the verification of the cell phone exchanges between the cell phone in Slaughter's possession and that of the victim just minutes before the shooting, the identification of the burgundy Mitsubishi used by Slaughter as the vehicle involved in the crimes, and the statements about the shooting of the victim made by Slaughter was sufficient to enable a rational trier of fact to find Slaughter guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, supra.

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 3, 2011.

*Hollowell, Foster & Herring, Jolanda E. Herring*, for appellant.
*Robert D. James, Jr., District Attorney, Leonora Grant, Deborah D. Wellborn, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Christopher R. Johnson, Assistant Attorney General*, for appellee.