304 Ga. 809
FINAL COPY

S18A1602. GARTRELL v. THE STATE.

BOGGS, Justice.

Appellant Nyheim Gartrell was tried before a jury and found guilty of felony murder, aggravated assault, armed robbery, and possession of a firearm during the commission of a felony in connection with the death of James Edwards.[1] He now appeals, asserting that the evidence was insufficient to support the verdicts. We disagree and affirm.

The record reveals that in the early morning hours of June 1, 2014, Gartrell and Edwards were with others at a home where beer, cigarettes, and

---

[1] The crimes were committed on June 1, 2014. On August 10, 2015, a Wilkes County grand jury indicted Gartrell on charges of malice murder, felony murder (two counts), aggravated assault, armed robbery, and possession of a firearm during the commission of a felony. Following a November 14-16, 2016 trial, a jury acquitted Gartrell of malice murder but found him guilty on the remaining counts, and he was sentenced to life in prison without the possibility of parole, plus five years. Gartrell's motion for new trial was filed on December 2, 2016, amended by new counsel on May 24, 2017, and denied on March 26, 2018. His notice of appeal was filed on March 30, 2018. This case was docketed in this Court for the August 2018 term and submitted for a decision on the briefs.

other items were sold. At some point, Gartrell commented to two women present that Edwards "had money and a ticket and that [Gartrell] wanted to buy [the women]." One of the women considered Gartrell's statement "a joke." A few hours later, around 5:00 a.m., a deputy had finished his shift and pulled into his driveway when he heard a "loud shot." He patrolled the area but returned home when he could not determine the source of the shot. Shawntay Doughty also heard a gunshot in the early morning hours. Later in the morning, a passerby mentioned to Doughty that he believed he saw a body lying on a nearby dirt road in an area called "Railroad Alley." Doughty went to the location and, upon seeing the body, called the police.

Police and GBI agents arrived and identified the body as that of Edwards. It appeared as if someone had been through one of his pockets. Agents made a plaster impression of a shoe print found at the scene. They confirmed that Edwards was shot with a 9mm pistol. Four days later, they returned to the scene and discovered a Winchester 9mm cartridge casing near where Edwards' body had been found. Upon interviewing witnesses, agents determined that Gartrell was one of the last people to see Edwards alive and received his consent for a buccal swab to obtain his DNA.

The investigation stalled until a shooting took place injuring a person on August 9, 2014, during a fight at a private party at the Pope Center. Four shell casings were found at the scene. A close friend of Gartrell, Timothy Crew, was arrested and charged with that shooting, but Crew urged Gartrell to come forward and turn himself in as the shooter. When Gartrell refused, Crew contacted his attorney to "tell the truth about what [Gartrell had] done." Crew's mother asked Gartrell for the pistol used in the Pope Center shooting in an attempt to gather evidence that would exonerate her son. Gartrell gave Crew's mother the weapon, and she hid it in Crew's car for about a week before informing police of its location. During trial, the State played a recorded phone call between Crew and Gartrell, recorded while Crew was incarcerated, during which Crew pleaded with Gartrell to turn himself in for the Pope Center shooting. Gartrell told Crew that he could not turn himself in for fear that "old stuff" would be brought up and that if he did so he would be "f'ed up for life," but that Crew could "tell them." He also told Crew that Crew was allowing "folks [to] spook him" and that he could not be charged for something he did not do.

A GBI agent interviewed both Crew and his mother. During the interview,

which was recorded, Crew told police that he had witnessed Gartrell shoot a 9mm pistol at the Pope Center and that witnesses mistakenly identified him as the shooter instead of Gartrell. Crew also told police that Gartrell had admitted to him the night of the Pope Center shooting that he had used the same weapon to shoot and kill Edwards in Railroad Alley, that he stole cash from Edwards, and that he later attempted to hide both the weapon and the red Chuck Taylor Converse tennis shoes that he was wearing at the time. Crew claimed that Gartrell told him that he intended to rob Edwards but that it "went bad," and he shot Edwards before taking $53 from him. Crew showed police a photograph of Gartrell with a 9mm pistol in his waistband and claimed that Gartrell still had the murder weapon in his possession. At trial, however, Crew testified that he did not give police any information about the Railroad Alley shooting and did not remember telling police that Gartrell admitted to him that he robbed and killed Edwards. Crew was impeached with his prior statement, which was played for the jury.

Police executed a search warrant for Gartrell's home, where they found a box of Winchester 9mm cartridges and a pair of red, white, and blue Chuck Taylor Converse tennis shoes. The shoes were similar to the size, width, and

4

tread design of the footprint impression found at the Railroad Alley murder scene, although experts could not say that the impression came from Gartrell's shoe. A ballistics expert determined that the cartridges recovered from the Pope Center and in Railroad Alley had been discharged from the 9mm pistol obtained with the help of Crew's mother. The expert testified further that the projectile recovered from Edwards in Railroad Alley was consistent with having been fired from a Hi-Point 9mm pistol, but he was unable to determine if it had been fired from the particular 9mm pistol obtained by police. Gartrell's DNA, along with the DNA of a person other than Edwards, was found on the backstrap of the 9mm pistol.

Gartrell argues that this evidence was insufficient to support the verdicts. Specifically, he asserts that, after Edwards' body was discovered, the crime scene was accessible by others for several days before agents found the cartridge casing; the man who found Edwards' body denied owning a pair of Chuck Taylor Converse tennis shoes, but his house was never searched; the firearms expert could not conclusively testify that the bullet recovered from Edwards was fired from the pistol Crew's mother gave to police; DNA from an unknown person was also found on the pistol; and the expert witnesses could not

conclusively testify that the cast of the shoe print at the scene was an identical match to Gartrell's shoe.

When evaluating a challenge to the sufficiency of the evidence under the standard set forth by Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), "this Court views all of the evidence admitted at trial in the light most favorable to the verdicts and asks whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted." Sloans v. State, 304 Ga. 363, 364 (1) (818 SE2d 596) (2018). And "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. "Questions about the reasonableness of other hypotheses in cases based on circumstantial evidence . . . are for the trier of fact to decide." State v. Holmes, 304 Ga. 524, 526 (1) (820 SE2d 26) (2018).

Here, the evidence showed that Gartrell: was the last person seen with Edwards; made a comment about Edwards possessing money the night before his body was found; possessed the same type of ammunition as the projectile that was recovered from Edwards' body, which was also consistent with the

cartridge casing found at the scene; possessed tennis shoes similar to the size, width, and tread design of the footprint impression found at the scene; gave Crew's mother the weapon, with his DNA on the backstrap, that produced the cartridge casing found at the scene; and admitted to Crew that he stole cash from Edwards and killed him using the same weapon that he used in the Pope Center shooting. Although, at trial, Crew denied telling police that Gartrell had admitted to the robbery and murder of Edwards, it is the duty of the jury to evaluate the credibility of witnesses. Sharpe v. State, 272 Ga. 684, 685 (1) (531 SE2d 84) (2000). Thus, the jury was authorized to believe Crew's pre-trial statement and to reject his testimony at trial. See id.

Though largely circumstantial, the evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find Gartrell guilty beyond a reasonable doubt of the crimes for which he was convicted. See Lowe v. State, 295 Ga. 623, 625 (1) (759 SE2d 841) (2014).

Judgment affirmed. All the Justices concur.

Decided December 10, 2018.

Murder. Wilkes Superior Court. Before Judge Hinesley.

Walton Hardin, Jr., Harold W. Wallace III, Jane S. Dansie, for appellant.

Dennis C. Sanders, District Attorney, William P. Doupé, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine D. Emerson, Assistant Attorney General, for appellee.