## S99A1391. HAMPTON v. THE STATE.
(527 SE2d 872)

HINES, Justice.

Kevin Todd Hampton appeals his convictions for two counts of malice murder, one count of armed robbery, one count of possession of a silencer, and two counts of possession of a firearm during the commission of a felony, in connection with the deaths of Tommy Anderson and David Shumake. For the reasons that follow, we affirm and remand.[1]

On January 23, 1996, the bodies of Anderson and Shumake were found in a common grave on property belonging to Mike Haywood. They had been missing for approximately a month.

On the evening of December 17, 1995, Michelle Keiffer, Hampton's roommate, saw Hampton drive his car into their driveway. He removed something from his trunk and a truck pulled into the driveway. Shortly thereafter, Keiffer heard some gunshots, and Hampton later woke her, told her to keep a lookout while he was in the house, and remarked that "when you shoot something in the head that they do flop like a fish." He instructed her to follow him while he drove what Keiffer identified as "Tommy's" truck to Haywood's property. Hampton put a handgun and either a rifle or shotgun in a garage on the property. Hampton told Keiffer to get her boyfriend Graves and tell him "they had a package to get rid of." Keiffer returned to her house, found Graves, and told him Hampton wanted him at Haywood's.

---

[1] The crimes occurred on December 17 and 23, 1995. On October 7, 1996, a Carroll County grand jury indicted Hampton on two counts of malice murder, two counts of felony murder while in the commission of aggravated assault, one count of felony murder while committing the felony of possession of a silencer, one count of armed robbery, one count of possession of a silencer, and two counts of possession of a firearm during the commission of a felony. He was tried November 11-15, 1996, and found not guilty on the felony murder counts, and guilty on all other counts. On November 15, 1996, he was sentenced to consecutive terms of life in prison on the two malice murder counts, twenty years in prison for armed robbery to be served consecutively to the second life term, five years in prison for possession of a silencer, to be served concurrently with the armed robbery sentence, and two sentences of five years in prison on the two counts of possession of a firearm during the commission of a felony, to be served consecutively with each other, and consecutively to the armed robbery sentence. He moved for a new trial on November 26, 1996, and amended the motion on April 2, 1999. The motion was denied on April 26, 1999, and Hampton filed a notice of appeal on April 28, 1999. His appeal was docketed in this Court on June 21, 1999, and submitted for decision on August 15, 1999.

Hampton admitted to Graves that he had murdered Anderson. They moved Anderson's body to the bed of a pickup truck and covered it with a tarp. They then went to Anderson's motel room and searched it. The next day, Hampton and Graves put Anderson's body in a shallow grave on Haywood's property, poured gasoline on it, burned it for approximately 20-30 minutes, and covered it.

On the evening of December 23, 1995, Hampton and Graves were at Haywood's home with several others. Hampton spoke with Shumake and Haywood in Haywood's bedroom; Hampton had previously told Graves that he wanted to kill Shumake. Hampton asked Haywood where Haywood's pistol was; Hampton had made a silencer for the weapon. Hampton demonstrated the silencer's effectiveness to Shumake by firing the pistol into a telephone book. While Haywood was looking in another direction, he heard two muffled shots. He turned around and saw Shumake collapsed on Hampton with blood running down Shumake's face. Hampton then turned to Haywood, who was confined to a wheelchair, and asked: "Everything okay? Got a problem?" Haywood said no. Hampton recruited Graves to help him get rid of Shumake's body and he and Graves put the body in a long, metal box. The next day, Graves covered the body with lime and, using a backhoe, Hampton and Graves buried the box with the body inside in the same grave as Tommy Anderson's body.

Later, Keiffer told Hampton that she thought Graves was scared, and Hampton stated that he was not sure that he could trust them. Before he was arrested, Hampton told Keiffer that it was not her fault or Graves's fault, and that the police would be looking for him because he was "the one that shot them."

When recovered, both bodies were badly decomposed. Anderson's remains showed skeletal fractures that occurred after death and clotted blood in the larynx and throat, indicating traumatic injury to the neck, which could have been caused by a bullet; no bullet was found in Anderson's body and the skull did not appear to have been penetrated before death. A .22 caliber bullet shot from Haywood's pistol was found inside Shumake's cranial cavity.

1. Hampton contends that the evidence is insufficient to support the convictions. He urges that the testimony of Haywood and Graves cannot be credited because they were as likely to be involved in the crimes as he, and that some of their testimony was inconsistent with the physical evidence, and inconsistent with their prior statements. However, resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court. *Berry v. State*, 268 Ga. 437, 438 (1) (490 SE2d 389) (1997). The evidence authorized the jury to conclude that Hampton was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Hampton also contends that the evidence required a directed verdict on armed robbery, because it was not shown whether the use of the pistol occurred before Hampton took Anderson's truck, or after. See *Miles v. State*, 261 Ga. 232, 234 (1) (403 SE2d 794) (1991). However, the jury was authorized to conclude, in accord with Hampton's own statement to Graves, that Hampton's taking of the truck occurred after Anderson had been shot. See *Francis v. State*, 266 Ga. 69, 70-71 (1) (463 SE2d 859) (1995).

2. Hampton contends that the trial court should have ensured that opening statements and closing arguments were recorded. However, there is no requirement that the court take such action, see OCGA § 17-8-5 (a), and it does not appear that Hampton ever requested that the reporter record the statements and arguments.

3. There is no fatal variance between the evidence and the allegations of the indictment that Anderson was murdered "with a firearm" and was the victim of armed robbery. While the state of the body prevented any conclusive medical evidence about the cause of death, Keiffer's testimony concerning gunshots, as well as Hampton's own statements to her and Graves, was evidence that the crimes were committed as alleged in the indictment; Hampton even showed Graves where on Anderson's body the bullet entered. See *Battles v. State*, 262 Ga. 415, 417 (5) (420 SE2d 303) (1992). There was evidence that Hampton then took Anderson's truck. Further, even if the absence of conclusive medical evidence that Anderson died as a result of a gunshot produced a variance, Hampton was sufficiently informed of the charges against him so as to form his defense, and there was no danger that he could be prosecuted again for the same offenses. Id.

4. The State asked witness Deese: "Did anybody else ask you to get rid of the truck?" Hampton objected that the question called for hearsay, and the court ruled that, under authority of OCGA § 24-3-2, the question was permissible because it sought to explain Deese's conduct of taking parts off Anderson's truck and removing them from Haywood's property. Deese had already testified that Hampton himself asked him to get rid of the truck and its parts.

In *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982), this Court stated a rule for applying OCGA § 24-3-2; if the conduct and motives of the actor are relevant to the issues on trial, then information, conversations, letters and replies, and similar evidence known to the actor are admissible to explain the actor's conduct. Hampton was charged with armed robbery by taking Anderson's truck. The disposition of the truck after Hampton took possession of it, and the reasons for that disposition, were relevant to the armed robbery charge, and the court did not err in determining that the question and answer were permissible.

Further, if there was any error in permitting the question, it was harmless. In response, Deese testified that Haywood had stated that he was afraid Hampton would do something to Haywood's stepchildren "if anything come [sic] out of this." Hampton did not object to the answer in any way, and it is highly probable that any error in admitting the response did not contribute to the verdict and was, therefore, harmless. See *Brinson v. State*, 262 Ga. 227, 229 (3) (486 SE2d 830) (1997).

5. Hampton contends that the issue of prosecutorial misconduct should be remanded for a factual hearing. But Hampton did not raise any question of prosecutorial misconduct below and has waived appellate review of this issue. See *Miller v. State*, 267 Ga. 92 (475 SE2d 610) (1996).

6. The jury was instructed that

for an armed robbery to take place it is not necessary for the victim to be conscious or even alive at the time of the theft. Where evidence is sufficient to show that a theft was completed against the victim, a conviction for armed robbery is authorized regardless of where [sic] the intent to commit the theft arose.

The charge was clearly concerned with when in time the intent to commit the theft arose in relation to the taking, not where Hampton might have been when he formed the intent. Viewing the charge as a whole, we conclude that the court's slip of the tongue constituted harmless error. See *Willingham v. State*, 268 Ga. 64, 65-66 (5) (485 SE2d 735) (1997).

7. The trial judge charged the jury: "You will determine both the law and the facts in this case." While this language was formerly in the Suggested Pattern Jury Instructions, it has since been replaced. See *Dasher v. State*, 229 Ga. App. 41, 44 (3) (494 SE2d 192) (1997). The language is taken from the Constitution of the State of Georgia, Art. I, Sec. I, Par. XI (a), and although it may be the better practice for trial courts to instruct the jury on this point in accordance with the current language of the Suggested Pattern Jury Instructions, see *Dasher*, supra, it is not error to charge the jury as was done here. See *Harris v. State*, 190 Ga. 258, 263 (9 SE2d 183) (1940); *Hall v. State*, 201 Ga. App. 133, 135 (5) (410 SE2d 448) (1991). Accord *State v. Freeman*, 264 Ga. 276, 277 (444 SE2d 80) (1994). The trial judge adequately and accurately charged the jury on the applicable law and the jury was properly left to apply the law to the facts of the case.

8. The trial court also instructed the jury that direct evidence "is the testimony given by a witness who has seen, or who has heard the facts to which the witness testifies. It includes exhibits admitted into

evidence during the trial. It is that evidence which points immediately to the question at issue." Such an instruction has been held not to be erroneous. *Roberson v. State*, 214 Ga. App. 208, 212 (11) (447 SE2d 640) (1994). The jury had previously been instructed that, generally, evidence includes exhibits, and was also properly instructed on circumstantial evidence. Viewing the jury instructions as a whole, we do not believe that the jury could have construed the charge to mean that all exhibits were to be considered direct evidence pointing immediately to the question of guilt. Id.

9. After deliberations began, the jury informed the court that it was not close to reaching a unanimous verdict and the foreman stated: "We are exhausted, mentally exhausted." The court then gave an *Allen* charge (*Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896)), instructing the jurors to continue deliberation and to examine their differences in a spirit of fairness and candor. The jury later requested, and received, re-instruction on reasonable doubt. It then returned verdicts of guilty on all counts, except those charging felony murder.

Hampton did not move for a mistrial or object to the court's *Allen* charge. There was no indication from the jury that it was hopelessly deadlocked and the court made it clear that if no verdicts were reached soon, "other arrangements" and "the next course of action" would be addressed. The length of deliberation was not excessive; the transcript does not reveal the exact length, but evidence went to the jury at 4:33 p.m. and the verdicts were rendered the same day. Under these circumstances, there was no abuse of the trial court's discretion in allowing the jury to further consider the case. *Clifford v. State*, 266 Ga. 620, 622 (4) (469 SE2d 155) (1996).

10. Hampton raises in this Court, for the first time, a claim of ineffective assistance of trial counsel. He was represented by the same counsel at trial and on the motion for new trial. Thus, it must be concluded that this issue is being raised at the first practicable moment. See *Ryan v. Thomas*, 261 Ga. 661, 662 (409 SE2d 507) (1991). As this claim has not been addressed by the trial court, the case is remanded for a hearing and determination on the ineffective assistance claim. *Russell v. State*, 267 Ga. 865, 868 (4) (485 SE2d 717) (1997).

*Judgments affirmed and case remanded. All the Justices concur.*

DECIDED MARCH 27, 2000 —
RECONSIDERATION DENIED APRIL 11, 2000.

*Moulton & Massey, John W. Moulton*, for appellant.
*Peter J. Skandalakis*, District Attorney, *Anne C. Allen, Jeffery W. Hunt*, Assistant District Attorneys, *Thurbert E. Baker*, Attorney Gen-

*eral, Paula K. Smith, Senior Assistant Attorney General, Adam M. Hames, Assistant Attorney General*, for appellee.