S04A0691. GLENN v. THE STATE.
(602 SE2d 577)

</div>

FLETCHER, Chief Justice.

Following a bench trial in Wilkes County, Crystal Glenn was convicted of two counts of felony murder, two counts of cruelty to children in the first degree, and aggravated battery for her involve-ment in the abuse and death of her daughter, Tynisha Glenn.[1] On

---

[1] The crimes were committed on or around April 26 and 28, 1999. On August 2, 2001, a Wilkes County grand jury indicted Glenn for malice murder, two counts of felony murder, two counts of cruelty to children, and aggravated assault. After waiving her right to a jury and proceeding with a bench trial, Glenn was convicted on August 28, 2002, of both counts of felony

appeal, Glenn contends that the evidence was insufficient to convict her as a party to the crimes. We conclude that the evidence was sufficient to convict Glenn of one count of cruelty to children, but insufficient with respect to the other count of cruelty to children, the aggravated battery count, and both counts of felony murder. Accordingly, we affirm in part and reverse in part.

1. The evidence presented at trial shows that Tynisha Glenn was born on April 7, 1999. Her 17-year-old mother, Crystal Glenn, suffered serious post-delivery complications, which resulted in the loss of a large amount of blood and an emergency hysterectomy. Tynisha left the hospital before Glenn, and stayed with Glenn's mother for a week until Glenn was finally discharged. After Glenn was discharged, Tynisha came to live with Glenn and her boyfriend, Edward Quinn, in their Wilkes County home. Quinn was not Tynisha's father.

Sometime during the morning of April 26, 1999, Glenn and others noticed that Tynisha was favoring one of her legs. At 10:45 p.m. that night, Glenn and Quinn finally took Tynisha to a hospital in Athens. Later, investigators asked Glenn why she had waited so long before taking the child to the hospital, and why she had taken her to Athens when the Wilkes County Hospital was much closer to their home. Glenn stated that she had been worried that the Department of Family and Children Services would take Tynisha away because on a prior occasion, at the Wilkes County Hospital, DFCS had threatened to take away one of Glenn's older children.

Doctors in Athens determined that Tynisha suffered from a "bucket-fracture" just above her knee, which the doctors believed was most likely the result of forceful twisting or shaking. Although Quinn told the doctors that Glenn had rolled over on the baby in bed, the doctors testified that the injury could not have occurred in that manner. Because the doctors had no solid evidence of abuse, Tynisha was discharged in the care of Glenn and Quinn.

Tynisha spent the night of April 26 at Glenn's mother's house in Oglethorpe County, but was returned to Glenn's house in Wilkes County around noon on April 27. One of Glenn's sisters visited Tynisha at Glenn's house that evening, and later testified that the baby appeared normal when she left around 9:00 p.m. According to

murder, both counts of cruelty to children, and aggravated assault. Glenn was acquitted of malice murder. One count of cruelty to children and the aggravated battery count merged as a matter of law into the felony murder convictions, and one of the felony murder convictions was vacated. On September 18, 2002, Glenn was sentenced to life in prison for felony murder, and ten years for the remaining cruelty to children conviction, to be served concurrently. Glenn moved for a new trial on September 25, 2002, and amended her motion on August 1, 2003. The trial court denied the motion on October 6, 2003, and Glenn filed her timely notice of appeal on October 16, 2003. The case was docketed in this Court on December 30, 2003, and submitted on the briefs on February 23, 2004.

the investigator's testimony, Glenn stated that she left Tynisha in Quinn's care when she went to sleep for the night. Around 3:00 a.m. that night, Quinn awoke Glenn and told her that Tynisha was having trouble breathing.

At 3:30 a.m. on April 28, Tynisha was admitted to Wilkes County Hospital, unconscious and barely breathing. The doctors ordered antibiotic treatment for sepsis, and dispatched an ambulance to transport her to the Medical College of Georgia. The doctor testified that only Quinn answered questions about the baby's condition, and that he referenced the leg injury from two days before and said that it occurred when Glenn rolled over on the baby. Tynisha never regained consciousness, and died from brain damage as a result of a blunt force head trauma on April 30, 1999.

Quinn pled guilty to felony murder and cruelty to children, and the evidence that he was the actual perpetrator of the abuse of Tynisha was strong. Quinn's grandfather, who lived with Glenn and Quinn, told investigators that he witnessed Quinn shaking the baby and striking her head on a wall. Other witnesses testified that they had observed Quinn become upset and violent with children when they cried. Witnesses also testified that Quinn's babies in Michigan had suffered from suspicious injuries, including broken ribs. On the other hand, numerous witnesses testified that Glenn had never abused her children.

(a) In Count Six, Glenn was charged with cruelty to children by intentionally delaying medical treatment for Tynisha's fractured leg on April 26. The acts underlying Count Six are explicitly distinguished in the indictment from the acts underlying Counts One through Five. From the evidence presented at trial, the judge was authorized to find that Glenn waited for at least a number of hours before seeking medical attention for Tynisha, and that she took Tynisha to Athens instead of the much closer Wilkes County Hospital to avoid a confrontation with DFCS.

Under OCGA § 16-5-70 (b), "[a] person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." Malice, as an element of the crime of cruelty to children, can be shown by intentionally and unjustifiably delaying necessary medical attention for a child, as that delay may cause the child to suffer from cruel and excessive physical pain.[2] After reviewing the evidence in support of Count Six in the light most favorable to the verdict, we conclude that there was sufficient evidence for a rational

---

[2] *Mikenney v. State*, 277 Ga. 64 (2) (586 SE2d 328) (2003); *Hill v. State*, 243 Ga. App. 614, 616 (533 SE2d 779) (2000).

trier of fact to find Glenn guilty beyond a reasonable doubt of cruelty to children.[3]

(b) In Counts Two, Three, Four, and Five, Glenn was charged with cruelty to children, aggravated battery, and two counts of felony murder for her role in the acts that caused Tynisha's head injury.[4] At trial, the State argued that Glenn was guilty as a party to the crime because she was concerned in the commission of those acts even if she did not commit them directly. Although mere presence at the scene of the crime is insufficient grounds for a conviction, a person can be guilty as a party to the crime if they intentionally aid, abet, encourage, facilitate, assist, or are otherwise concerned in the commission of the acts that constitute the crime.[5] "Aiding and abetting encompasses the concept of helping in the commission of a crime."[6]

In support of these charges, the State presented evidence that Glenn allowed Quinn to care for Tynisha when Glenn was sleeping even though she had been told earlier that day that Quinn may have been responsible for Tynisha's leg injury and that Quinn may have been abusive towards other babies. Further, Glenn failed to participate in the emergency room discussion or inform doctors about what others had said about Quinn's treatment of Tynisha and his other babies.

But the State was required to prove beyond a reasonable doubt that Glenn intentionally assisted, aided, abetted, encouraged, or otherwise concerned herself in the abuse of Tynisha, not that she did so inadvertently.[7] This the State failed to do. There was absolutely no evidence showing that Glenn intentionally assisted Quinn's abuse of Tynisha in any way. Further, the State failed to exclude the reasonable hypothesis that Quinn injured the baby while Glenn slept unaware in another room in the house, and that Glenn failed to participate in the emergency room discussion because she did not know what had caused Tynisha to stop breathing.

In *Johnson v. State*,[8] this Court ruled that the evidence was

---

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] In the cruelty to children count, Glenn was charged with maliciously causing Tynisha cruel and excessive pain by striking and shaking her causing blunt force head trauma. In the aggravated battery count, Glenn was charged with maliciously causing bodily harm to Tynisha by depriving her of the use of her body due to massive brain injury. The State is not required to indicate in the indictment that it is charging a person as a party to the crime. *Brinson v. State*, 261 Ga. 884 (413 SE2d 443) (1992). But when construed under the State's theory that Glenn was a party to the crime, the State was required to prove that Glenn intentionally aided, abetted, encouraged, or otherwise assisted in the malicious acts that caused Tynisha's head injury.

[5] OCGA § 16-2-20.

[6] *Sharpe v. State*, 272 Ga. 684, 688 (6) (531 SE2d 84) (2000).

[7] *Jones v. State*, 250 Ga. 11, 13 (295 SE2d 71) (1982).

[8] 269 Ga. 840 (506 SE2d 374) (1998).

insufficient to convict a child's uncle of felony murder and cruelty to children. The evidence showed that three adults, the two parents and the baby's uncle, were present in the house on the night the child was beaten and killed. The parents were sleeping upstairs in the same room as the baby and the uncle was sleeping downstairs. A neighbor testified that the baby had been crying all night, but that after a mysterious "thump" was heard around 3:00 a.m., the baby was quiet. The neighbor heard the uncle saying "I didn't do it" around 4:00 a.m., and, at 6:00 a.m., the uncle called the police and told them that the baby was not breathing. The baby was dead when police arrived, and the cause was later determined to be massive trauma to multiple parts of the baby's body.

This Court found the evidence sufficient to support the parents' convictions,[9] but insufficient to convict the uncle of cruelty to children, even though the evidence showed that the uncle had witnessed the father's prior abuse towards the child and was uncooperative in the investigation. But like the State's case against Glenn, the State's case against the uncle in *Johnson* was based entirely on circumstantial evidence, and the State failed to exclude the reasonable hypothesis that the uncle had been downstairs sleeping when the parents, unbeknownst to the uncle, committed the crime against the baby. Similarly, the State failed in this case to exclude the reasonable hypothesis that Quinn injured Tynisha while Glenn slept unaware in another room in the house. Without any evidence that Glenn intentionally assisted Quinn in the abuse of Tynisha, the convictions cannot be sustained.[10]

Accordingly, the State failed to prove beyond a reasonable doubt that Glenn intentionally aided, abetted, encouraged, or otherwise concerned herself in the commission of the acts that caused Tynisha's head injury, and her convictions for cruelty to children, aggravated battery, and felony murder with respect to those acts cannot be sustained. Her convictions for Counts Two, Three, Four, and Five are hereby reversed.

2. Glenn also contends that the State did not prove that venue was proper in Wilkes County beyond a reasonable doubt, but this argument has no merit. The leg injury was first noticed on the morning of April 26 while Tynisha had been staying with Glenn and Quinn in their Wilkes County home. The head injury that caused Tynisha's death occurred sometime between her discharge from the

---

[9] *Johnson v. State*, 269 Ga. 632 (501 SE2d 815) (1998) (upholding felony murder and cruelty to children convictions of parents of victim, both of whom were in the same room with the baby when she was being beaten).

[10] See *Williams v. State*, 256 Ga. 460, 461 (349 SE2d 695) (1986) (mere presence, without more, is an insufficient basis to support convictions for a crime).

Athens hospital on April 26 and her admittance to Wilkes County Hospital in the early morning of April 28. Although Tynisha spent the night of April 26 with her grandmother in Oglethorpe County, witnesses testified that the baby was alert when she was brought back from the grandmother's house to Glenn's Wilkes County home around noon on April 27. Doctors stated that the head injury Tynisha suffered would have likely caused an immediate change to her level of consciousness. Although doctors conceded that in some cases the injury could take hours to manifest in loss of consciousness, when viewed in the light most favorable to the verdict, the State carried its burden of proving that both injuries were inflicted at Glenn's home in Wilkes County.

3. Glenn also argues that the trial court improperly admitted statements made by Quinn to emergency room doctors on April 28 about Tynisha's prior leg injury. Because those statements do not pertain to Glenn's sole remaining conviction, we need not address that argument.

4. Next, Glenn contends that the trial court abused its discretion by refusing to grant a continuance to allow her to locate her mental health expert and procure his presence in court.[11] Glenn sought to use the expert to show that she is mentally retarded. The record reveals, however, that the trial court did not abuse its discretion, as Glenn was afforded an extra day to locate the expert, and the trial judge assisted her in those efforts.[12]

5. Finally, Glenn contends that the trial court abused its discretion in failing to grant a continuance or a mistrial when newly discovered evidence was presented to the defense at the beginning of the defendant's case-in-chief.[13] On the evening before Glenn was set to begin her case-in-chief, the prosecutor informed her attorney that he had located an audiotape, made by DFCS, of the various interviews between Glenn, the DFCS agent, and the GBI investigator. The trial court concluded that the tape had not been hidden in bad faith, and its finding in that regard is not contradicted by any evidence.[14] Further, the court granted a recess to allow Glenn to listen to the audiotape, and offered to allow her to recall any witnesses she needed in response to the evidence. Glenn has failed to show how she was prejudiced in any way by the inadvertent failure of the State to promptly produce the evidence.

---

[11] OCGA § 17-8-22.

[12] *Johnson v. State*, 275 Ga. 650, 652 (571 SE2d 782) (2002).

[13] OCGA § 17-16-4 (detailing State's discovery obligations).

[14] OCGA § 17-16-6 (outlining proper remedies for discovery violations depending on whether the violation was committed in bad faith or caused the defendant prejudice).

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED SEPTEMBER 13, 2004.

*Anna P. Johnson*, for appellant.

*Dennis C. Sanders, District Attorney, William P. Doupé, Assistant District Attorney, Thurbert E. Baker, Attorney General, Andrette Watson, Assistant Attorney General*, for appellee.