S05A2071, S05A2073. DELACRUZ v. THE STATE (two cases).

(627 SE2d 579)

THOMPSON, Justice.

Julio and Savina Delacruz, husband and wife, were jointly tried and convicted of felony murder and cruelty to children in the first degree for their involvement in the abuse and death of their three-year-old daughter, Alejandra Delacruz.[1] Finding that *Miranda* warnings were properly administered, that the jury instructions did not amount to reversible error, and that the evidence was constitutionally sufficient against both defendants, we affirm their convictions in this consolidated opinion.[2]

Viewed in a light most favorable to the verdict, the evidence shows that on the morning of May 17, 2003, Julio took Alejandra to Kennestone Hospital. The child presented in an unresponsive state, with a severe head injury and multiple wounds to her body. A CT scan demonstrated a subdural hematoma to the brain, which, according to the treating physician, usually results from blunt force trauma. The physician also noted diffuse bruising to the child's face, trunk and extremities, and burn-type injuries to the hands, legs and thigh,

---

[1] On August 21, 2003, Julio and Savina Delacruz were jointly charged in an eight-count indictment with malice murder, felony murder (two counts), aggravated battery, and cruelty to children in the first degree (four counts). The charged crimes spanned a period beginning January 1, 2003 and culminating with the child's admission to the hospital on May 17, 2003. A joint trial commenced on March 22, 2004, and on March 29, 2004, a jury found both Julio and Savina guilty of felony murder while in the commission of cruelty to children in the first degree, and three counts of cruelty to children in the first degree; they were acquitted of the remaining charges. Both were sentenced on the same day to life imprisonment for felony murder, and each received sentences of twenty consecutive years for one count of cruelty to children, and twenty concurrent years for a second count of cruelty to children; the remaining count merged into the felony murder convictions. Motions for new trial were filed by each defendant on March 31, 2004. Savina's motion was denied on March 31, 2005, and Julio's was denied on June 28, 2005. Timely notices of appeal were filed by both defendants. The consolidated cases were docketed in this Court on August 25, 2005. Oral argument was heard on November 7, 2005.

[2] Savina Delacruz appeals in Case No. S05A2071; Julio Delacruz appeals in Case No. S05A2073.

compatible with child abuse. Some of the injuries were more superficial and appeared to have been in various stages of healing. A pediatrician qualified as an expert in child abuse described the child's injuries as "breathtaking" and so pervasive that she could not "delineate one from another." That expert also testified that the child exhibited bilateral retinal hemorrhages which were consistent with rotational shaking, "the hallmark of child abuse." The expert concluded that Alejandra's injuries were consistent with shaking, blunt force trauma, and "Battered Child Syndrome."

The child was transported to Scottish Rite Hospital's intensive care unit, where she died several days later. The autopsy revealed multiple areas of hemorrhage to the brain, each representing a separate blow to the head. The medical examiner opined that the child had been subjected to Shaking Impact Syndrome — "shaken and then slapped down hard on some object," "multiple times," "terminating in an event with blunt head trauma," which caused her death. He concluded that the injuries were intentionally inflicted and could not have been accidental.

Meanwhile, police were dispatched to the Delacruz residence where they found Savina with the couple's two younger children. After obtaining a consent to search the apartment, the police collected a hammer, a broken broom handle, a VCR, and three belts, one of which was stained with Alejandra's blood. A template of the markings on the victim's back matched the pattern on that belt.

Savina and Julio were taken into custody and questioned separately. Savina spoke only Spanish, and Julio spoke little English. A Smyrna city marshal who was fluent in Spanish and English acted as an interpreter; he read the *Miranda* warnings to each defendant in Spanish and carefully explained their meaning. Both defendants executed written waivers of *Miranda* rights in Spanish.

Savina was questioned by the investigating officer through the interpreter. She was shown photographs of Alejandra's body and was asked who inflicted each injury. She initially stated that the burns to the child's hands and feet were the result of a "chemical reaction." Later, she told the interpreter outside the presence of the officer, that "I'm not going to lie anymore." She then admitted that she burned the child's fingers by placing them on an electric stove as punishment because the child had urinated on the carpet. Savina claimed that the injury to the head resulted from the child playing with a broken broom. She also told the officers that the child had suffered from seizures earlier in the week of May 16, 2003; apparently, no medical treatment was sought at that time. Savina admitted that she had no maternal feelings for the child.

Julio was questioned in the same manner. He stated that he left his apartment at 7:00 p.m. on the evening of May 16, 2003 to go to the

store. When he returned at 10:00 p.m., the child was vomiting and having seizures. He also disclosed that the child previously had seizures from which she recovered consciousness; this time, however, she did not. Nonetheless, he left the child alone and went to bed. At about 4:00 a.m., he was awakened by the sounds of the child in distress and he observed her in an unconscious state. He waited until 8:00 a.m. the next morning, however, to take her to the hospital. When shown the photographs of the child's injuries, he admitted that he had inflicted the injuries to the child's legs over a period of several weeks by punishing her with his belt.

### Case No. S05A2071

1. The evidence was sufficient to authorize a rational trier of fact to find Savina Delacruz guilty beyond a reasonable doubt of felony murder and cruelty to children. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Savina submits that the trial court erred in denying a motion to suppress her custodial statement because (1) the State failed to use a certified interpreter; and (2) the Spanish version of the *Miranda* warnings given to her was incomplete.

Whether an accused understood the *Miranda* warnings depends on the totality of the circumstances, not solely the skill of the interpreter. *Nguyen v. State*, 273 Ga. 389 (2) (b) (543 SE2d 5) (2001). There is no requirement that *Miranda* warnings be given by a certified translator. In *Nguyen*, supra, this Court upheld the validity of *Miranda* warnings administered in Vietnamese by the defendant's son, who was not a certified interpreter. So long as the accused understands the explanation of rights, an imperfect translation does not rule out a valid waiver. *Tieu v. State*, 257 Ga. 281 (2) (358 SE2d 247) (1987). Here, the record shows that the city marshal who acted as a translator was called upon regularly to serve as a translator by various law enforcement agencies. Savina points to no error in the translation; therefore, she has not demonstrated prejudice. See *Choi v. State*, 269 Ga. 376 (3) (497 SE2d 563) (1998).

Nor do we find any infirmity in the content of the *Miranda* warnings given in Spanish. It was established at a *Jackson v. Denno* hearing that both defendants had the equivalent of a ninth grade education in Mexico and that they could read and write Spanish. "The simple fact that there may have been some inconsistency in the exact form of the various warnings does not establish that the statement was involuntary. See *Duckworth v. Eagan*, 492 U. S. 195 (109 SC 2875, 106 LE2d 166) (1989)." *Ramirez v. State*, 279 Ga. 569, 576 (8) (619 SE2d 668) (2005). See also *Osborne v. State*, 263 Ga. 214 (4) (430 SE2d 576) (1993). The Spanish translation of the *Miranda* form given

to defendants clearly expressed the required concepts; any deviation was at most minor and inconsequential. *Ramirez*, supra.

Considering the totality of the circumstances, the trial court was authorized to conclude that defendants knowingly and voluntarily waived their constitutional right to remain silent and their right to counsel.

## Case No. S05A2073

3. Julio asserts that the evidence was insufficient to establish that he committed, or was a party to the crime of felony murder and the predicate offense of cruelty to children.

"Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." OCGA § 16-5-70 (b).

> For purposes of this Code section, malice in the legal sense, imports the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result. Intention may be manifest by the circumstances connected with the perpetration of the offense. Intent is a question of fact to be determined upon consideration of words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.

(Citations and punctuation omitted.) *Brewton v. State*, 266 Ga. 160, 161 (2) (465 SE2d 668) (1996).

The relevant count of the indictment charged Julio with felony murder while in the commission of the felony of cruelty to children in the first degree, "by using blunt force, causing trauma to [Alejandra's] head and by shaking her."

The State's theory of the case was that even if Julio had been away from the apartment for several hours on the evening of May 16, he was guilty as a party to the crime of felony murder. A person concerned in the commission of a crime is a party thereto, and may be charged and convicted of the crime, if that person: "(1) Directly commits the crime . . . (3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime." OCGA § 16-2-20. Thus, the State was required to prove beyond a reasonable doubt that Julio "intentionally aided, abetted, encouraged, or otherwise assisted in the malicious acts that caused [Alejandra's] head injury." *Glenn v.*

*State,* 278 Ga. 291, 294, n. 4 (602 SE2d 577) (2004). With regard to the crime of cruelty to children, "criminal intent may be inferred from conduct before, during and after the commission of the crime." *Johnson v. State,* 269 Ga. 632, 634 (501 SE2d 815) (1998).

The uncontroverted evidence established that Julio regularly beat the child with his belt; that punishment with the belt caused bloody injuries to the child; that Julio was aware that the child had experienced seizures prior to the evening in question; that he observed her in extreme distress when he returned to the apartment at 10:00 p.m. that evening but offered her no assistance; and that he realized her condition had worsened during the night but still took no action to procure medical care until the next morning. Based on this evidence, the jury was authorized to conclude beyond a reasonable doubt that Julio participated in the pattern of child cruelty over the course of several months, and that he aided and abetted in the malicious acts that caused Alejandra's death. "Malice, as an element of the crime of cruelty to children, can be shown by intentionally and unjustifiably delaying necessary medical attention for a child, as that delay may cause the child to suffer from cruel and excessive physical pain." *Glenn,* supra at 293.

We conclude that the evidence adduced at trial was sufficient to enable a rational trier of fact to find Julio guilty beyond a reasonable doubt as a party to the crime of cruelty to children and felony murder under the standard of *Jackson v. Virginia,* supra. See *Johnson,* supra. Compare *Glenn,* supra and *Johnson v. State,* 269 Ga. 840 (506 SE2d 374) (1998) (convictions for felony murder cannot be sustained where there was no evidence that the defendant intentionally assisted in the abuse of the child).

The dissent takes the position that Julio's conviction for felony murder cannot stand because there was a fatal variance between the allegations of the indictment and the proof at trial such that Julio was not sufficiently informed as to the charges against him.

> Our courts no longer employ an overly technical application of the fatal variance rule, focusing instead on materiality. The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. Only if the allegations fail to meet these tests is the variance fatal.

*Buice v. State*, 239 Ga. App. 52, 58 (4) (520 SE2d 258) (1999). See also *Atkins v. State*, 274 Ga. 103 (3) (549 SE2d 356) (2001); *DePalma v. State*, 225 Ga. 465 (3) (169 SE2d 801) (1969). Julio was not subjected to either of these dangers. The evidence was overwhelming that the crimes were committed as alleged in the indictment. The question remaining is whether Julio aided and abetted in the commission of those crimes. "[R]esolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court." *Hampton v. State*, 272 Ga. 284, 285 (1) (527 SE2d 872) (2000). Our role is to apply the standard of *Jackson v. Virginia*, which we conclude has been satisfied in this case.

4. We reject Julio's assertion that count seven of the indictment should have merged into the felony murder count because it is the same as a matter of fact as count five, the predicate child cruelty offense. Count five charged cruelty to children occurring on May 17, 2003; that offense was properly merged into the felony murder. In count seven Julio was charged with cruelty to children over the five-month period preceding the child's death. Thus, count seven contains the additional element of the time period of January 2003 through May 2003 and refers to acts of child cruelty which occurred prior to May 17, 2003.

Under Georgia law, "we use the actual evidence test: [I]f the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under OCGA § 16-1-6 (1)." (Citations and punctuation omitted.) *Mitchell v. State*, 275 Ga. 42, 43 (2) (561 SE2d 803) (2002). Here, the evidence established that the child had been subjected to multiple assaults to her head, limbs, and torso, which were in distinct stages of healing, and which occurred at various times. Thus, count seven did not merge as a matter of fact into felony murder, and the trial court was authorized to enter a judgment of conviction and sentence on that count. OCGA § 16-1-6.

5. It is asserted that the trial court gave erroneous jury instructions in two respects:

First, Julio asserts that the court erroneously charged the jury that if they were to find beyond a reasonable doubt *"either or both* defendants knowingly and intentionally participated or helped in the commission of [the charged crime], then you would be authorized to convict *either or both* defendants." (Emphasis supplied.) He submits that this instruction permitted the jury to convict both defendants even if it found that only one defendant had knowledge of and intentionally committed the crimes. Our review of the record shows that the "either or both" language was suggested by Julio's counsel at the charge conference, and all of the attorneys agreed to the phrase. "A defendant cannot complain of a verdict which was brought about

by a charge which he had requested [or] that is aided by his own trial tactics, procedures, and conduct." (Citations and punctuation omitted.) *Taylor v. State*, 195 Ga. App. 314, 316 (4) (393 SE2d 690) (1990). In addition, the court later charged that conviction of one defendant does not necessarily require conviction of the other, and that the jury must consider the guilt or innocence of each defendant on each count separately. Under the circumstances, we find no error.

Next, Julio claims that the court misstated the burden of proof as to alibi, by charging "if you do *not* believe from the entire evidence that the defendant is guilty beyond a reasonable doubt, you may convict." (Emphasis supplied.) "A mere verbal inaccuracy resulting from a slip of the tongue which does not clearly mislead or confuse the jury is not reversible error." *Matthews v. State*, 268 Ga. 798, 805 (7) (c) (493 SE2d 136) (1997). The misstatement here was immediately preceded by an instruction that if, in considering alibi evidence, "you should entertain a reasonable doubt as to the guilt of the accused, it would be your duty to acquit the defendant." Thus, in considering the charge in its entirety, we are satisfied that the misstatement did not amount to reversible error. *Sanders v. State*, 257 Ga. 239 (6) (357 SE2d 66) (1987).

*Judgment affirmed in Case No. S05A2071. All the Justices concur. Judgment affirmed in Case No. S05A2073. All the Justices concur, except Sears, C. J., Hunstein, P. J., and Benham, J., who concur in part and dissent in part.*

SEARS, Chief Justice, concurring in part and dissenting in part.

I concur in the decision to affirm the convictions against Savina Delacruz. I also concur in the decision to affirm the convictions against Julio Delacruz on the two counts of cruelty to children that were based on his regular abuse of Alejandra, by beating her with a belt and otherwise. Regrettably, due to a fatal variance between the indictment and the evidence, I am compelled to dissent to that part of the majority opinion affirming Julio's convictions for felony murder and cruelty to children relating to the incident that caused Alejandra's ultimate death.

The only evidence introduced at trial indicated that at the time Alejandra's fatal injuries were inflicted, Julio was not at the scene. The evidence showed that Julio came home later that evening and found the child in acute distress, but waited until the next morning to seek medical attention.

Although the majority correctly states that cruelty to children may be committed by intentionally failing to seek necessary medical attention and thereby causing a child to experience cruel or excessive

pain,[3] the problem with that theory in this instance is that the relevant count of the indictment charged Julio with causing the child's death through blunt force head trauma or shaking. Because the description of the manner in which the crime is committed is a material allegation in the indictment, relying on Julio's failure to seek medical care to sustain this conviction creates a variance problem between the indictment and the evidence. "[I]f an indictment avers that an offense is committed in one particular way, the proof must so show it, or there will exist a fatal variance."[4]

Although it is true that we do not rely on an overly technical application of the fatal variance rule, the majority fails to explain how Julio was put on notice that he could be convicted for failing to render medical care when the indictment charged him with causing the child's injuries. Because the indictment failed to put Julio on notice that he could be convicted for failing to seek medical care, as opposed to causing the injuries in the first place, the evidence of his failure to obtain care, standing alone, cannot support his conviction.[5] By way of contrast, in the *Glenn* case cited by the majority, the indictment specifically charged Glenn with causing excessive pain by failing to seek medical care.[6]

Because Julio cannot be convicted solely for failing to render medical care, the question remaining is whether sufficient evidence was presented to show that Julio aided, abetted, encouraged, or otherwise assisted in the malicious acts that caused Alejandra's injuries. The only evidence cited by the majority to purportedly support that conclusion is Julio's participation in the pattern of abuse inflicted upon the child. I am unwilling, however, to expand the "party to a crime" concept to such an extent that a defendant's past participation in a pattern of conduct qualifies as aiding, abetting, encouraging, or otherwise assisting in a future crime in which he does not participate.

Had the State properly charged Julio with failing to seek medical care for the child, who was in obvious distress, Julio could have been

---

[3] See *Glenn v. State*, 278 Ga. 291, 293 (602 SE2d 577) (2004).

[4] *Gentry v. State*, 212 Ga. App. 79, 83 (441 SE2d 249) (1994); see also *Petty v. Smith*, 279 Ga. 273, 274 (612 SE2d 276) (2005) ("[t]he law is clear that where an indictment charges a defendant with committing an offense by one specific method, the defendant cannot be convicted of that offense based on a totally different, unspecified method."); *Henderson v. State*, 113 Ga. 1148 (39 SE 446) (1901) ("[N]o averment in an indictment can be rejected as surplusage which is descriptive either of the offense or of the manner in which it was committed. All such averments must be proved as laid, or the failure to prove the same as laid will amount to a variance.").

[5] *Dobbs v. State*, 235 Ga. 800, 802 (221 SE2d 576) (1976) (the indictment must be sufficiently detailed to allow the accused to be "definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial").

[6] 278 Ga. at 293 (1) (a).

convicted for felony murder based on his role in Alejandra's death. Unfortunately, Julio was not properly charged, and the cruelty to children and felony murder counts based on the conduct that caused Alejandra's death are not supported by any evidence. Accordingly, I regretfully concur in part and dissent in part to today's majority opinion.

I am authorized to state that Presiding Justice Hunstein and Justice Benham join in this dissent.

DECIDED MARCH 13, 2006 —
RECONSIDERATION DENIED APRIL 13, 2006.

*Justin J. Wyatt,* for appellant (case no. S05A2071).
*Ruth P. Marks,* for appellant (case no. S05A2073).
*Patrick H. Head, District Attorney, Amy H. McChesney, Eleanor A. Dixon, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Robin J. Leigh, Assistant Attorney General,* for appellee.