A07A0730. COCHRAN v. THE STATE.
(645 SE2d 662)

PHIPPS, Judge.

After a jury trial, Shaun Keith Cochran was convicted of first degree cruelty to children, by causing his infant daughter cruel and excessive physical and mental pain by breaking her arm. On appeal, he contends the evidence was insufficient to show he had the requisite intent. Because the record demonstrates otherwise, we affirm.

When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence.[1] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[2]

So viewed, the evidence showed that on November 1, 2004, five-month-old D. C. began crying when her parents, Cochran and his girlfriend, were arguing in another room of their home. Cochran went to check on D. C. Moments later, the baby's mother heard a "blood-cur[d]ling scream like [she had] never heard [D. C.] do before," followed by Cochran screaming that "[s]omething popped." The mother rushed into the room with Cochran and their baby, and Cochran told her that he had been trying to pull D. C.'s arm from behind her back when he heard the "pop."

---

[14] (Citations and punctuation omitted.) *Nichols v. State*, 281 Ga. 483, 485 (2) (a) (640 SE2d 40) (2007).

[15] See *Quimbley*, supra at 177 (2).

[1] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Later that evening, an emergency room physician examined numerous x-rays of D. C. and determined that she had suffered a spiral fracture of her left humerus. The physician testified as an expert in the field of medicine that bones in a five-month-old baby are "almost bendable, because they're not calcified real strong"; that it was rare for a baby's bone to break; that a broken bone suffered by a baby was "usually due to trauma like a car accident or something like that"; that the x-rays showed that D. C.'s humerus had been broken by a "twisting force"; and that D. C. had no condition, such as brittle bones, that might have been a contributing factor to her injury.

D. C.'s pediatrician similarly testified that D. C. had no condition, such as brittle or weak bones, that would have contributed to her injury. As an expert in the field of pediatric medicine, he testified that the x-rays of the spiral fracture of her humerus "suggests that a force was applied to the arm that had some degree of bending and maybe some degree of twisting" and that "this kind of fracture of the humerus is something that is known to be non-accidental trauma."

Prior difficulties evidence showed that Cochran had been spanking D. C. since she was two or three months old. Further, D. C.'s mother had caught Cochran once holding their baby in midair — "just shaking her."

In a police statement about the incident underlying the instant conviction, Cochran stated, "I went to the bedroom and used too much force when I picked [D. C.] up, and I heard her bone pop. I did not mean to do it." At trial, Cochran testified that, during that time in his life, he was frustrated, stressed, and had an anger problem. He recalled that on the night in question, he was in the midst of an argument with his girlfriend and was angry with her when he went to check on D. C. Cochran testified that when he lifted D. C., he heard a "pop," and then the baby started "screaming." He resolved, "I might have grabbed [D. C.] too hard when I went to pick her up," but insisted that breaking her arm was "an accident."

There is no merit in Cochran's contention that the evidence was insufficient to show that he had the requisite intent to commit first degree cruelty to children. Under OCGA § 16-5-70, "[a]ny person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain."[3]

For purposes of this Code section, malice in the legal sense, imports the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular

---

[3] OCGA § 16-5-70 (b).

harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result. Intention may be manifest by the circumstances connected with the perpetration of the offense. Intent is a question of fact to be determined upon consideration of words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.[4]

Based on this standard, despite Cochran's claim that breaking D. C.'s arm was "an accident" and that he "did not mean to do it," the evidence was sufficient to authorize the jury to find that he acted with the requisite intent and to find him guilty beyond a reasonable doubt of committing first degree cruelty to children.[5]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED APRIL 26, 2007.

*Jennifer R. Ennerberg*, for appellant.
*T. Joseph Campbell, District Attorney*, for appellee.

---

[4] *Delacruz v. State*, 280 Ga. 392, 395 (3) (627 SE2d 579) (2006) (citation and punctuation omitted).

[5] See *Sampson v. State*, 283 Ga. App. 92, 93-94 (1) (640 SE2d 673) (2006).