**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 4, 2020**

# In the Court of Appeals of Georgia

A20A1502. SOLIS-MACIAS v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Rosalino Solis-Macias on one count of sexual battery and five counts of child molestation. On appeal, Solis-Macias contends that the trial court erred in admitting video from a law-enforcement officer's body-camera, denying his motion to suppress his custodial statement, and refusing to give a jury instruction on sexual battery as a lesser-included offense of child molestation. For the reasons set forth *infra*, we affirm Solis-Macias's convictions.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that in 2018, Solis-Macias was married to Ingrid Solis, and the two of them lived in a duplex with their five-year-old son, as well as Ingrid's two other children from a

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

previous marriage—thirteen-year-old son, D. B., and eight-year-old daughter, Y. B. On May 10, 2018, Ingrid disciplined Y. B. for using a cell phone when she was not allowed to do so. This decision upset Y. B., and she complained to her mother that she wanted to go live with her biological father. And when pressed by her mother as to why she was so upset, Y. B. disclosed that Solis-Macias inappropriately kissed her and made her touch his penis. Solis-Macias initially denied acting inappropriately, but the next morning, after he went to work, Ingrid sent him a text message, again asking if Y. B.'s disclosure was true. This time, he admitted that Y. B. was telling the truth and apologized for his actions.

Immediately thereafter, Ingrid called the police, and Athens-Clarke County police officer Robert Britt arrived at their apartment a short time later. Officer Britt—who was wearing a body-camera—began questioning Solis-Macias, and although English was seemingly not Solis-Macias's native language, he understood the officer's questions and admitted that he touched Y. B.'s privates on several occasions. Officer Britt then transported Solis-Macias to the police station, at which point Officer Laila Schuler conducted a custodial interview. At the start of the interview, Officer Schuler—who was born in Mexico and is fluent in Spanish—read

2

Solis-Macias his *Miranda* rights[2] in English from a card and then summarized those rights in Spanish. Solis-Macias indicated that he understood those rights and agreed to speak with Officer Schuler without an attorney present. And during the course of this interview, Solis-Macias admitted that he touched Y. B.'s vagina on four separate occasions and made her touch his penis on one occasion. In addition, Solis-Macias informed Officer Schuler that he told Y. B. not to tell her mother about his actions.

That same day, May 11, 2018, a forensic interviewer with a local child advocacy center met with Y. B. And during the interview, which was recorded, Y. B. was initially reluctant to disclose what Solis-Macias had done to her. But she eventually explained—via a written note—that at some point after she turned seven years-old, Solis-Macias began sexually abusing her. Specifically, Solis-Macias told Y. B. that he wanted to be her boyfriend and would stick his tongue in her mouth and touch her privates. Additionally, on the same day as the interview, a sexual-assault nurse examiner performed a physical examination on Y. B., during which Y. B. again disclosed the details of Solis-Macias's actions.

Thereafter, the State charged Solis-Macias, via indictment, with one count of aggravated sexual battery and five counts of child molestation. The case then

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (86 SCt. 1602, 16 LE2d 694) (1966).

3

proceeded to trial, during which the State presented the foregoing evidence. In addition, Y. B. testified, and the State played the video from Officer Britt's body-camera, as well as the video of Y. B.'s forensic interview. Then, at the conclusion of the trial, the jury found Solis-Macias guilty of sexual battery as a lesser-included offense of the aggravated sexual battery charge in Count 1 and guilty of the separate child-molestation charges in Counts 2 through 6. Subsequently, Solis-Macias filed a motion for new trial, which the trial court denied. This appeal follows.

1. Solis-Macias first contends that the trial court erred in admitting the video from Officer Britt's body-camera into evidence, arguing that doing so violated the prohibition against recording a person without their consent as provided for in OCGA § 16-11-62 (2).[3] We disagree.

---

[3] Although Solis-Macias has not challenged the sufficiency of the evidence supporting his convictions, we have reviewed the record and find the evidence sufficient to enable a jury to conclude beyond a reasonable doubt that he was guilty of all the crimes of which he was convicted. *See Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) ("Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.").

As a general rule, admission of evidence is "a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse."[4] We find no abuse of that discretion here.

Turning to the specific claim at issue, when he arrived at the family's apartment to investigate Y. B.'s disclosure, Officer Britt was wearing a body-camera, which recorded his encounter with Solis-Macias and his wife. And when asked if he sought Solis-Macias or his wife's consent to record this interaction, Officer Britt responded that he did not. Solis-Macias then objected to the recording's admission, but the trial court overruled his objection, and the State then played the recording for the jury.

On appeal, Solis-Macias argues that Officer Britt's body-camera recording of his investigation and the admission of that recording into evidence was prohibited by OCGA § 16-11-62 (2), which provides that "[i]t shall be unlawful for . . . [a]ny person, through the use of any device, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out of public view . . . ." But subsection (D) of this same statute provides "that it shall not be unlawful . . . [f]or a law enforcement officer or his or her agent

---

[4] *Adams v. State*, 316 Ga. App. 1, 3 (1) (728 SE2d 260) (2012) (punctuation omitted); *accord Smith v. State*, 302 Ga. App. 128, 130 (1) (690 SE2d 449 (2010).

to use a device in the lawful performance of his or her official duties to observe, photograph, videotape, or record the activities of persons that occur in the presence of such officer or his or her agent . . . ."[5] And with specific regard to subsection (D), the Supreme Court of Georgia has noted that

> to the extent that OCGA § 16-11-62 (2) could have been construed to apply to the actions of police officers making video recordings of others without their consent after being invited into someone's home, the legislature made clear through a 2015 amendment to OCGA § 16-11-62 (2) that police do not have to obtain the consent of all parties being video recorded in a private place and outside of the public view when they record such persons in connection with their duties as police officers.[6]

And in this case, given that it is undisputed Officer Britt was recording his interaction with Solis-Macias and his wife as part of his official duties, the recording was not prohibited by OCGA § 16-11-62 (2).[7] Accordingly, the trial court did not abuse its discretion in admitting the recording into evidence.

---

[5] OCGA § 16-11-62 (2) (D).

[6] *State v. Cohen*, 302 Ga. 616, 630 (2) (b) n.13 (807 SE2d 861) (2017); *see* Ga. L. 2015, § 2.

[7] *See Cohen*, 302 Ga. at 630 (2) (b) n.13.

6

2. Solis-Macias also maintains that the trial court erred in denying his motion to suppress his custodial statement. Again, we disagree.

When a trial court rules upon the admissibility of a custodial statement following a *Jackson-Denno*[8] hearing, it must determine whether, "based upon the totality of the circumstances, a preponderance of the evidence demonstrates that the statement was made freely and voluntarily."[9] And when the facts material to a motion to suppress are disputed, it "generally is for the trial judge to resolve those disputes and determine the material facts."[10] In fact, our Supreme Court has identified three corollaries of this principle, which "limit the scope of review in appeals from a grant or denial of a motion to suppress in which the trial court has made express findings of disputed facts."[11] First, appellate courts generally must "accept those findings

---

[8] *See Jackson v. Denno*, 378 U.S. 368 (84 SCt. 1774, 12 LE2d 908) (1964).

[9] *Bell v. State*, 284 Ga. 790, 794 (2) (671 SE2d 815) (2009) (punctuation omitted); *accord Gunn v. State*, 342 Ga. App. 615, 622 (2) (804 SE2d 118) (2017); *see Vergara v. State*, 283 Ga. 175, 176 (657 SE2d 863) (2008) (explaining that the trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances).

[10] *Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015); *accord Pena v. State*, 297 Ga. 418, 421 (3) (774 SE2d 652 (2017).

[11] *Hughes*, 296 Ga. at 746 (1) (punctuation omitted); *accord Pena*, 297 Ga. at 421 (3).

7

unless they are clearly erroneous."[12] Second, we must construe the evidentiary record "in the light most favorable to the factual findings and judgment of the trial court."[13] And third, we generally must limit our consideration of the disputed facts to "those expressly found by the trial court."[14]

In this matter, just prior to Officer Schuler's testimony, the trial court conducted a *Jackson-Denno* hearing. And during that hearing, Officer Schuler—who was born in Mexico and considers Spanish her native language—testified that she first read Solis-Macias his *Miranda* rights in English, verbatim, from a card and then summarized those rights for him in Spanish. Officer Schuler also explained that, as part of that summary, she explained to Solis-Macias that he did not have to speak with her and he could have a lawyer if he wanted one. She further testified that she believed Solis-Macias completely understood her, she made no promises to him, and he agreed to speak to her without an attorney. Thereafter, Solis-Macias testified and

---

[12] *Hughes*, 296 Ga. at 746 (1) (punctuation omitted); *accord Pena*, 297 Ga. at 421 (3).

[13] *Hughes*, 296 Ga. at 746 (1) (punctuation omitted); *accord Pena*, 297 Ga. at 421 (3).

[14] *Hughes*, 296 Ga. at 746 (1) (punctuation omitted); *accord Pena*, 297 Ga. at 421 (3).

claimed that he was too overwhelmed with emotion at the time to understand Officer Schuler and did not recall being informed that he could have an attorney present. But he did admit to telling Officer Schuler that he would speak with her. At the conclusion of the hearing, the trial court denied Solis-Macias's motion to suppress his statement, finding that he knowingly and intelligently waived his *Miranda* rights, and that his statement was freely and voluntarily given, with no hope of benefit or fear of injury.

Solis-Macias now contends that because his native language is Spanish, Officer Schuler did not properly advise him of his *Miranda* rights when she merely summarized those rights in Spanish rather than reading them verbatim as she did in English. This argument is a nonstarter. Indeed, even if there were some inconsistency in the exact form of the various warnings summarized by Officer Schuler, this fact "does not establish that the statement was involuntary."[15] And considering the totality of the circumstances, including the rather important fact that the interrogating officer who is a native Spanish speaker testified that Solis-Macias understood her and chose to speak without an attorney, the trial court did not err in concluding that (1) the State

---

[15] *Delacruz v. State*, 280 Ga. 392, 394 (2) (627 SE2d 579) (2006) (punctuation omitted).

demonstrated by a preponderance of the evidence that Solis-Macias knowingly and voluntarily waived his *Miranda* rights, and (2) his custodial statement was voluntary.[16]

3. Finally, Solis-Macias claims that the trial court erred in refusing to give a jury instruction on sexual battery as a lesser-included offense of child molestation as alleged in Counts 3 through 6 of the indictment. Once again, we disagree.

In this matter, Counts 3 through 6 of the indictment charged Solis-Macias with four separate acts of child molestation, alleging in each that he "did commit an indecent act to Y. B., a child under the age of 16 years, with the intent to arouse the sexual desires of himself by touching said victim's genital area, said act being separate and distinct from the acts alleged [in the other child molestation counts] . . . ." And during the charge conference, Solis-Macias's counsel requested that the trial court instruct the jury on sexual battery as a lesser-included offense of those child-

---

[16] *See Pena*, 297 Ga. at 422 (3) (holding that Spanish-speaking defendant's waiver of his *Miranda* rights was knowing and voluntary, because even though Spanish-speaking detective who gave warnings mispronounced some Spanish words and used some unintelligible words, totality of circumstances showed defendant understood); *Delacruz*, 280 Ga. at 394-95 (2) (holding that whether an accused understood the *Miranda* warnings depends on the totality of the circumstances, not solely on the interpreter's skill, and that an imperfect translation of the rights does not rule out a valid waiver as long as the accused understood the warnings).

molestation counts. But the State objected, and the trial agreed, ruling that sexual battery was not a lesser-included offense of child molestation in this case. Even so, Solis-Macias argues that the trial court's refusal to give the instruction constituted error.

Needless to say, this Court reviews the trial court's "refusal to give a requested charge for an abuse of discretion."[17] And when the evidence shows "either the completed offense as charged or no offense, such evidence will not support a verdict for one of the lesser grades of the offense, and the court should not charge on the lesser grades of the offense."[18] But when a case contains some evidence, no matter how slight, that shows the defendant "committed a lesser offense, then the court should charge the jury on that offense."[19]

Relevant here, OCGA § 16-6-4 (a) (1) provides that "[a] person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to

---

[17] *Jones v. State*, 352 Ga. App. 380, 386 (2) (a) (834 SE2d 881) (2019) (punctuation omitted).

[18] *Walker v. State*, 279 Ga. App. 749, 751 (3) (a) (632 SE2d 482) (2006) (punctuation omitted).

[19] *Id.* (punctuation omitted).

11

arouse or satisfy the sexual desires of either the child or the person." And under OCGA § 16-6-22.1 (b), "[a] person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person." So, Solis-Macias is correct that if the evidence showed "a touching without the intent necessary for child molestation, he would have been entitled to a jury instruction on sexual battery as a lesser included offense."[20]

But here, Solis-Macias has pointed to no evidence demonstrating that a touch occurred without the necessary intent. In fact, the State presented evidence suggesting otherwise, including that Solis-Macia asked Y. B. to be his girlfriend, would sometimes touch her after she got out of the shower, engaged in tongue-kissing with her, and had her touch his penis. Furthermore, Solis-Macias did not defend the case on the ground that he touched Y. B. without intent. Rather, his custodial statement

---

[20] *Smith v. State*, 310 Ga. App. 392, 396 (3) (713 SE2d 452) (2011); *see Walker*, 279 Ga. App. at 751 (3) (a) (explaining that if an indictment alleged child molestation, and if the evidence presented at trial was sufficient to show an intentional touching of the child's intimate parts, but without the intent necessary to prove child molestation, a charge on sexual battery as a lesser included-offense would be required); *Strickland v. State*, 223 Ga. App. 772, 776 (1) (b) (479 SE2d 125) (1996), *overruled on other grounds by Watson v. State*, 297 Ga. 718 (777 SE2d 677) (2015) (same).

12

notwithstanding, he seemingly pursued the "all or nothing" defense that Y. B. made up her story. For instance, on cross-examination of Ingrid and during closing argument, Solis-Macias focused on Y. B. expressing a desire to live with her biological father and implied that she had a history of fabricating allegations in order to change her custody situation. Additionally, the only defense witness was a Department of Family and Child Services worker who investigated allegations of abuse by the biological father and testified that Y. B. complained about both parents in the past as a means of changing her custody situation as it suited her. Moreover, Solis-Macias also questioned the DFCS worker on the appropriateness of Y. B. sharing a bedroom with her seventeen-year-old brother, implying that Y. B.'s knowledge of male genitalia was a result of seeing her brother naked as opposed to any inappropriate conduct on his part. Given these circumstances, the evidence did not support a charge on sexual battery as a lesser-included offense of child molestation; but on the contrary, demonstrated either the indicted crime or no crime at all.[21] Accordingly, the trial court did not err in refusing to give a jury instruction

---

[21] *See Smith*, 310 Ga. App. at 396 (3) (holding that the defendant was not entitled to jury charge on sexual battery as a lesser included offense of child molestation because defendant did not defend the case on ground that he touched victim without intent and instead pursued "all or nothing" defense that victim made up her entire story); *McGruder v. State*, 279 Ga. App. 851, 855 (2) (b) (632 SE2d

on sexual battery as a lesser-included offense of child molestation for Counts 3 through 6 of the indictment.

For all these reasons, the trial court's judgment is affirmed.

*Judgment affirmed. Rickman and Brown, JJ., concur*.

---

730) (2006) (holding that charge on sexual battery not required when evidence showed the intent necessary for child molestation and defendant asserted that touching never occurred); *Walker*, 279 Ga. App. at 752 (3) (a) (same).